MABEL S. MESTAD v. CITY OF ROCHESTER AND ANOTHER.[1]

December 31, 1936.

No. 31,000.

*Fraser & Fraser,* for appellant.
*Irving L. Eckholdt,* for respondents.

HOLT, JUSTICE.

Appeal from a judgment entered on the pleadings in favor of defendants without costs.

Plaintiff petitioned for a declaratory judgment. Defendants answered and plaintiff replied. The court on defendants' motion granted judgment on the pleadings in their favor. The petition for

[1]Reported in 270 N. W. 577.

a declaratory judgment prayed that plaintiff be reinstated as a social welfare worker and as such a member of the police department of defendant city, under its charter and ordinances. It perhaps would be as appropriate to name the proceeding an action in *mandamus* for restoration to an office from which plaintiff had been unlawfully discharged.

The pleadings admit these decisive facts: The defendant city was a municipal corporation of the second class whose mayor is the chief executive in command and control of the entire police department with power to appoint and remove any and all officers thereof. On March 3, 1931, the city availed itself of L. 1929, c. 299, 3 Mason Minn. St. 1934 Supp. §§ 1933-48 to 1933-63d, and established a police civil service commission. Prior thereto, in 1920, the city enacted ordinance No. 283, providing for the appointment by the mayor of a social welfare worker and specifying the powers and duties of such official, the appointment to be made on the second Monday of April of each year and to be for one year. Such welfare worker was to take an oath of office and give a bond to the city in the sum of $500. The duties prescribed were, among others, to assist the police department, to see that proper order is kept at all dances, games, amusements, and in all public gatherings; to act as social worker and adviser to the citizens of the city and see that good order is kept in the city; and perform such duties as the common council may require. The welfare worker is authorized to enter any building in the city in performance of duty, and must make monthly reports to the mayor. The salary on April 1, 1935, was $126 a month. Plaintiff was appointed by the mayor as social welfare worker in April, 1931, qualified and entered upon her duties, and has annually been appointed and has qualified since, serving until April 8, 1935, when she was discharged by the defendant mayor. It further appears that when the civil service commission organized in 1931 plaintiff was not called for examination, nor did she make application therefor, and was not placed on the service register of the police department required by the act to be made by the commission immediately upon its organization. No step was taken by the commission or the city with respect to plain-

tiff, except that in June, 1934, the civil service commission passed a motion that the city council amend the city ordinance "as to the number of police to include a police woman and that she be placed under civil service to come under the jurisdiction of the chief of police and not the mayor as at present," and that pursuant to a request by the then mayor, made December 26, 1934, the civil service commission certified the name of plaintiff to him as a social welfare worker to be governed by its rules and regulations. April 9, 1934, the then mayor of the city appointed plaintiff as "Special Welfare Worker to hold office until the second Monday in April, 1935, unless sooner removed." April 8, 1935, the defendant mayor declared "the position of Social Welfare Worker vacant and the services of Mrs. Mabel Mestad terminated."

Plaintiff in the trial below was represented by other attorneys than those taking the appeal. When the motion for judgment on the pleadings was submitted the attorneys stipulated that "the allegations of fact in the complaint [petition], answer and reply are all true." Legal conclusions stated in the pleadings were not admitted. Ever since the enactment of ordinance No. 283 one woman has been appointed and has served thereunder and that plaintiff was so appointed in April, 1931. At that time the civil service commission was in "absolute control and supervision over the employment, promotion, discharge and suspension of all officers and employees of the police department * * * and these powers shall extend to and include all members of the police department." L. 1929, c. 299, § 5, 3 Mason Minn. St. 1934 Supp. § 1933-52. And said § 5 made it obligatory upon the commission, as soon as organized, immediately to grade and classify the employes of the police department. The pleadings admit that the civil service commission took no action in this respect as to the social welfare worker then serving under an annual appointment pursuant to ordinance No. 283, nor did the commission take any action whatever in plaintiff's case, except by its certification of plaintiff's name on December 28, 1934. When the city on March, 1931, placed itself under L. 1929, c. 299, the authority of the mayor to appoint or discharge any police officer or employe in the police department was terminated, and

everyone in that department became subject to the power and authority of the civil service commission under the terms of that act. When the defendant city came under the act there was no provision whereby those then in the police department were automatically continued therein. As already indicated, the commission had first to act as provided in § 5 thereof. Nor is there anything in the act affecting ordinance No. 283. It is still in force and effect. Ordinance No. 467 has no bearing on any question here involved. It is also perfectly plain that the certification, on December 28, 1934, of plaintiff as a social worker is of no effect, for, in so doing, no attempt was made by the civil service commission to comply with said c. 299. Our conclusion is that by no lawful act of the civil service commission did plaintiff become a member of the police department of the city. She herself took no step to become such.

Neither do we think ordinance No. 283 is to be so construed as to make the social welfare worker a member of the police department. While some of her duties are of the same nature as that of a police officer, there are others of an entirely different scope. She was not placed under the authority of the chief of police. She was to assist the police department. She also was to act as social worker and adviser and to render such other services affecting the welfare of the citizens of the city as the city council might from time to time require. And from the report she was required to make to the mayor, a copy of which is attached to her pleading, it plainly appears that her duties are vastly different from that of the ordinary police officer, or even of a police matron or policewoman. The court below well characterizes the report mentioned, in these words:

"Thus the plaintiff's last annual report shows that, in addition to a vast amount of purely police work, she found homes for five boys, returned three girls who were not runaways to their homes; worked with 14 families and with 38 girls, and made 246 investigations. None of these cases necessarily involved the breaking of any law but were fraught with serious social or economic consequences for the individuals concerned. In addition to this she disposed of a majority of the cases which arose out of the breaking of some law or ordinance, such as stealing or the destruction of property by

children, without bringing them into court or making a police record."

Our conclusions are that neither ordinance No. 467, nor the certification of plaintiff by the commission on December 28, 1934, affected ordinance No. 283, which plainly places the appointment and removal of a social welfare worker with the mayor, and that no lawful action was ever taken by the civil service commission which placed her under its jurisdiction. The court correctly granted judgment on the pleadings.

The judgment is affirmed.

Mr. Justice Peterson, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.