DEBORAH ENGLE *v.* PERSONNEL APPEAL BOARD OF THE STATE OF CONNECTICUT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 13, 1977—decision released May 16, 1978

*Michael Sucoll,* with whom was *Peter Jenkelunas,* for the appellant (plaintiff).

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellee (defendant).

SPEZIALE, J. This is an appeal from a judgment of the Court of Common Pleas upholding a decision by the personnel appeal board that the plaintiff, Deborah Engle, was not entitled to additional compensation for working "out of class."

Engle was employed by the state as a typist II in the department of transportation. On January 5, 1972, her supervisor requested her to perform the duties of a clerk III, which duties she performed until November 24, 1972. On July 24, 1972, Engle commenced a grievance against the state, requesting that she be paid at the rate of a clerk III for the time during which she performed the duties of that position. The department of transportation, on August 23, 1972, applied to the state for approval of payments to Engle for working out of class. Such payments were denied by the department of personnel, on behalf of the personnel commissioner, on September 25, 1972. Engle appealed this denial to the personnel appeal board, and a hearing was held on July 5, 1973. The personnel appeal board ruled against her, and she then appealed to the Court of Common Pleas. Engle has appealed to this court from the judgment dismissing her appeal.

Basically the plaintiff's claims on appeal are that: (1) approval of the personnel commissioner is not required under General Statutes § 5-209 before a state employee can be compensated for working out

of class, and (2) even if such approval is required, the state is obligated to pay Engle by virtue of the doctrines of estoppel or unjust enrichment.

General Statutes § 5-209, at the time here in question, provided: "Any state employee who is assigned, by his appointing authority, duties and responsibilities of a job classification higher than the class in which he is placed, on a continuous basis for a period of more than sixty working days, shall be compensated for such time in excess of sixty days at a rate in the higher class which shall not be less than one step in that class above his existing rate of pay, *provided such payment shall be approved by the personnel commissioner.* Service in a higher classification under this section shall not constitute permanent status in such class." (Emphasis added.) See Public Acts 1967, No. 657, § 18. The plaintiff contends that, once it is determined that an employee has actually worked out of class after being assigned such duties by his or her appointing authority, the personnel commissioner may not deny payment under the statute. To interpret the statute in any other fashion, the plaintiff argues, would permit the commissioner to withhold approval arbitrarily, thus making the statute constitutionally suspect. We do not agree.

Adopting the plaintiff's position would effectively eliminate the proviso from the statute. The statute expressly makes payments contingent on approval by the personnel commissioner; if the commissioner is powerless to withhold approval once the work has been performed, then the proviso is meaningless. In construing a statute, each part should be treated as significant and necessary; every sentence, phrase and clause is presumed to have a

purpose. *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491 (1978); *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 109, 214 A.2d 354 (1965). It should further be presumed that a law was enacted in view of existing relevant statutes and that the legislature intended it to be read with them so as to constitute one consistent body of law. *Doe* v. *Institute of Living, Inc.,* supra; *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66 (1971); *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694 (1955). This latter presumption is relevant to a determination of whether a statutory requirement is mandatory or merely directory. Although it is often difficult to distinguish a provision which is merely directory from one which is mandatory, " 'the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial—to matter of convenience or substance.' *Gallup* v. *Smith,* 59 Conn. 354, 358 [22 A. 334]. . . . In the determination of the question as to whether or not a provision . . . is of the essence of the thing to be accomplished, . . . significance is to be attached to the nature of the act, and also the language and form in which the provision is couched." *Spencer's Appeal,* 78 Conn. 301, 303, 61 A. 1010 (1905); *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 205, 332 A.2d 90 (1973); *Akin* v. *Norwalk,* 163 Conn. 68, 72, 301 A.2d 258 (1972); *State ex rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 501, 294 A.2d 529 (1972).

An examination of the wording of the statute, the legislative history surrounding its enactment, and its statutory context indicates that the provision

should be construed as mandatory, and that approval by the personnel commissioner is a condition precedent to payment for working out of class.

Section 5-209 is part of chapter 67 of the General Statutes, the State Personnel Act. This act, which established a civil service system based upon principles of merit; General Statutes § 5-195; "was designed to eliminate, as far as practicable, the 'spoils' system of making appointments based upon political affiliations, and to prevent discrimination in appointments and dismissals based upon considerations other than fitness to perform a job." *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 671, 368 A.2d 20 (1976). Section 5-206, relating to position classifications, provides, inter alia, that the listing of a classification established by the personnel policy board must include a statement of the duties and responsibilities of an employee in that class and the pay grade for the class. Thus, an employee's rate of pay is determined by job classification, and job classification is controlled by the merit system.

The general rule is that an employee who has not been appointed and classified to a civil service position is not entitled to the salary prescribed for that classification even though he or she is performing the duties or has assumed the responsibilities of someone in that position. 15A Am. Jur. 2d, Civil Service, § 48; 81A C.J.S., States, § 108. Remarks in the General Assembly, in support of the bill providing for compensation to state employees who performed duties of a higher job classification,[1]

___

[1] Substitute for House Bill No. 2548; Public Acts 1965, No 581; General Statutes § 5-209.

indicated that the purpose of the legislation was to correct the practice whereby supervisors would request employees hired at a lower grade to fill vacancies in positions of a higher grade for indefinite periods of time only to have these employees shunted aside when the position was ultimately filled through competitive examination; the legislation was intended to permit an employee to be compensated for work done out of class for a significant period of time. 11 S. Proc., pt. 7, 1965 Special Sess., p. 2445; 11 H. R. Proc., pt. 7, 1965 Special Sess., pp. 3239–40. The merit system was safeguarded by the provision that service under a higher classification would not entitle an employee to permanent status in that class. Ibid.

Although § 5-209 *permits* payment to an employee who works out of class for an extended period of time, such payment is conditioned "provided such payment shall be approved by the personnel commissioner." The function of this proviso can be deduced from a look at several related sections of the State Personnel Act. Section 5-203[2] requires that all personnel changes, including vacancies and temporary changes in status, be reported to the personnel commissioner "at such time, in such form and together with such supporting or other pertinent information as he prescribes." At the time relevant here, § 5-214 provided in part that no vacancies in the classified service could be filled until the com-

---

[2] "[General Stautes] Sec. 5-203. REPORTS TO PERSONNEL COMMISSIONER OF PERSONNEL CHANGES. Each appointment, transfer, promotion, demotion, dismissal, vacancy, change of salary rate, leave of absence, absence from duty or other temporary or permanent change in the status of any employee in the classified service shall be reported to the personnel commissioner at such time, in such form and together with such supporting or other pertinent information as he prescribes."

missioner of finance and control certified to the appointing authority that the position was "necessary for carrying on the work of the state in an efficient and businesslike manner." Section 5-235 provided in subsection (a) that, under certain circumstances, the personnel commissioner could authorize the filling of a position by provisional appointment, pending the establishment of a reemployment or employment list, but that such appointment could continue only until such list was established, and in no case for a period exceeding four months. Subsection (c) of § 5-235 permitted appointing authorities, in an emergency, to appoint a qualified person to a position for which there were no certified eligibles for a period not to exceed sixty days; all such appointments were to be reported immediately to the commissioner of finance and could not be renewed.

It is clear from a reading of these statutes that the personnel commissioner was given broad powers to administer the state personnel system and was to supervise carefully any changes in employee placement. Provisional and emergency appointments were carefully regulated, to be kept to a bare minimum. If a vacancy arose, it could not be assumed that funds would be allocated to fill the position. In the context of this existing legislation, it is evident that a statute permitting compensation to employees who work out of class for more than sixty days would need to be qualified in some way. The legislature chose to qualify it by making payment conditional on approval by the personnel commissioner. Were there not such a limitation, an appointing authority might use § 5-209 to circumvent other requirements of the State Personnel Act, and perhaps even subvert the goals of the merit

system.[3]  Approval by the personnel commissioner is obviously a crucial element of the statute and must be regarded as mandatory.

The plaintiff claims that this interpretation of the statute would permit the commissioner to withhold compensation arbitrarily, and thereby render the statute constitutionally infirm.  This claim lacks merit.  We have consistently held that every presumption should be made in favor of the constitutionality of a statute, and it will be sustained unless its invalidity is established beyond a reasonable doubt.  *State* v. *Warren,* 169 Conn. 207, 217, 363 A.2d 91 (1975); *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355 A.2d 72 (1974).  Moreover, we have asserted that, where a statute permits two constructions, one valid and the other invalid as unconstitutional, the valid construction should be adopted, even where it is not the obvious one.  *Lublin* v. *Brown,* supra, 219–20.  The plaintiff has failed to show that the statute would permit the personnel commissioner to withhold payment arbitrarily.  On the contrary, the record before us reveals that a regulation issued by the personnel policy board, item 407-Q, setting forth conditions to be met before payment

---

[3] Although we impute no such intention to appointing authorities or supervisors, the potential for abuse is ·clear.  The plaintiff would have us read § 5-209 to make payment contingent only on whether the employee has actually worked out of class for the time in question.  Under this reading, an employee could be requested to work out of class for an indefinite period—in excess of the sixty-day limitation imposed on emergency employees under § 5-235 (c) and of the four-month limit on provisional appointments under § 5-235 (a)—certification need never be obtained to fill the vacancy, as required by § 5-214, the personnel commissioner need not approve of the appointment, yet the state would be required to pay an employee who had not been appointed under the merit system.

under § 5-209 could be approved, requires a determination by the personnel commissioner that "the assignment is necessary, the employee assigned is qualified, and all corrective measures to limit the duration of the assignment have been taken." Section 5-209, read in conjunction with this regulation, does not permit the personnel commissioner arbitrarily to confer or withold payments, and the plaintiff's constitutional challenge cannot be sustained.

We hold that the statute is constitutional and that approval of payments by the personnel commissioner is mandatory. Where a statutory provision of this nature is mandatory, it must be complied with strictly. " 'The doctrine of substantial performance has no application to the performance of duty by those entrusted with the administration of the civil service law. It would open the door to abuses which the law was designed to suppress. The law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness has been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments. . . . A civil service statute is mandatory as to every requirement. *Mestad* v. *City of Rochester,* 198 Minn. 588, 270 N.W. 577.' *State ex rel. Kos* v. *Adamson,* 226 Minn. 177, 182, 32 N.W.2d 281." *Walker* v. *Jankura,* 162 Conn. 482, 489–90, 294 A.2d 536 (1972).

Under § 5-209, Engle could not be paid for duties performed as a clerk III unless such payments were approved by the personnel commissioner. At the request of her supervisor, Engle began to perform the duties of a clerk III on January 5, 1972. On August 23, 1972, the department of transportation

applied for payments to Engle for working out of class. The department of personnel, on behalf of the personnel commissioner, denied the application on September 25, 1972. The grounds given for the refusal were that the department of transportation had failed to comply with the requirements set forth in a letter from the personnel commissioner dated December 6, 1971. This letter, addressed to all agency heads, stated in part: "Effective immediately no employee may be assigned to work in a higher classification under Item No. 407-Q unless *prior approval* has been received from the Personnel Commissioner."[4] (Emphasis added.) Although Engle was assigned to work in a higher classification on January 5, 1972, the department of transportation did not apply for approval until almost eight months later. Both the personnel appeal board and the Court of Common Pleas determined that payments under § 5-209 required prior approval by the personnel commissioner and, because such approval was not obtained, payments to Engle were properly denied. The court did not err in denying the plaintiff's appeal.

---

[4] It is significant that in 1973 § 5-209 was amended, removing the proviso here in question, "provided such payment shall be approved by the personnel commissioner," and inserting, "which assignment has been approved by the personnel commissioner, and who works in such assignment."

The present statute reads as follows: "[General Statutes] Sec. 5-209. COMPENSATION FOR PERFORMANCE OF DUTIES OF HIGHER JOB CLASSIFICATION. Any state employee who is assigned, by his appointing authority, duties and responsibilities of a job classification higher than the class in which he is placed, which assignment has been approved by the personnel commissioner, and who works in such assignment on a continuous basis for a period of more than sixty working days, shall be compensated for such time in excess of sixty days at a rate in the higher class which shall not be less than one step in that class above his existing rate of pay. Service in a higher classification under this section shall not constitute permanent status in such class."

Brief mention is made of the plaintiff's claim that, even if there was a failure to comply with the requirements of the statute, the state is estopped to deny the debt owed to her. In support of this claim, the plaintiff asserts in her brief that "she would not have assumed the duties of the higher class beyond the initial sixty-day period were it not for the assurances of her supervisor that she would be justly remunerated for her additional services" and that she was "also induced to continue working out of class by the endorsement of her request for additional compensation by the Department of Transportation." There is nothing in the record to support these assertions. The relevant portion of the stipulation submitted by the parties states only that "[o]n January 5, 1972, at the request of her supervisor, Miss Engle was asked to perform the duties of a Clerk III, which she did and continued to do until November 24, 1972." Given the barren state of the record, we cannot reach the issue of estoppel raised by the plaintiff.

The further claim that she is entitled to recovery on a theory of unjust enrichment is similarly with out merit because, in the absence of a statute such as § 5-209, there is no right to compensation for duties performed out of class. See 15A Am. Jur., Civil Service, § 48; 81A C.J.S., States, § 108.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred. BOGDANSKI, J., dissented.