STATEWIDE GRIEVANCE COMMITTEE *v.*
ZBIGNIEW ROZBICKI
(13557)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued March 7—decision released May 23, 1989

*Seymour N. Weinstein,* for the appellant-appellee (plaintiff).

*Francis J. MacGregor,* for the appellee-appellant (defendant).

PETERS, C. J. This appeal concerns the relationship between the judicial department's supervisory responsibility for the conduct of attorneys and the provisions of General Statutes (Rev. to 1987) § 51-90g (c),[1] which

---

[1] General Statutes (Rev. to 1987) § 51-90g (c) provided: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown. If the subcommit-

imposed time constraints upon the adjudicatory processes of the Statewide Grievance Committee (grievance committee) with respect to complaints of attorney misconduct. The grievance committee brought a presentment against the defendant Zbigniew Rozbicki charging him with misconduct as an attorney outside the presence of the court. The trial court, *Moraghan, J.,* granted the defendant's motion to dismiss the presentment for lack of subject matter jurisdiction. The grievance committee appealed to the Appellate Court and the defendant cross appealed. We transferred the appeal to ourselves pursuant to Practice Book § 4023. We find error.

The grievance proceedings against the defendant began with a complaint filed on January 15, 1987, by the complainant, Helen Huybrechts. On February 10, 1987, the grievance committee filed its own complaint charging the defendant with misconduct as an attorney outside the presence of the court. The local grievance panel, the Litchfield Grievance Panel (panel), considered the complaints and determined that probable cause existed that the defendant had violated the

tee does not complete its action on a complaint within the period of time provided in this section, the state-wide grievance committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action."

The time frame for the subcommittee's action on the complaint is also governed by Practice Book § 27J (e), which provides: "Within ninety days of the date the grievance panel filed its determination of probable cause or no probable cause with the statewide grievance committee, the reviewing committee shall render its proposed decision and file it with the statewide grievance committee. . . . The reviewing committee may file a motion for extension of time not to exceed thirty days with the statewide grievance committee which shall grant the motion only upon a showing of good cause. If the reviewing committee does not complete its action on a complaint within the time provided in this section, the statewide committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action."

Because the language of § 27J (e) is virtually identical to that of § 51-90g (c), we undertake no separate analysis of § 27J (e).

Code of Professional Responsibility. The panel filed its determination of probable cause with the grievance committee on May 1, 1987. The grievance committee appointed a subcommittee to review the complaint, as permitted by General Statutes § 51-90g (a).[2] Although § 51-90g (c) required the subcommittee to conclude any hearings and render its proposed decision on the complaint within ninety days of the date that the panel filed its determination of probable cause, no action was taken within ninety days. On August 5 and 6, 1987, the reviewing subcommittee held a hearing. The grievance committee, on August 20, 1987, granted the reviewing subcommittee a sixty day extension to render its proposed decision. The defendant requested an extension to file a post-hearing brief and filed the brief on August 27, 1987. On October 13, 1987, the reviewing subcommittee rendered its proposed decision, dated September 28, 1987. Then, on November 2, 1987, the grievance committee granted the reviewing subcommittee an additional ninety day extension.[3]

---

[2] General Statutes § 51-90g (a) provides: "REVIEW OF PANEL'S DETERMINATION BY SUBCOMMITTEE OR STATE-WIDE GRIEVANCE COMMITTEE. (a) The state-wide grievance committee may desigante at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. The committee shall regularly rotate membership on reviewing subcommittees and assignments of complaints from the various judicial districts. The state-wide grievance committee or the subcommittee, if any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. If the grievance panel determined that probable cause does not exist that the attorney is guilty of misconduct, the committee or subcommittee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist that the attorney is guilty of misconduct, shall thereafter hold a hearing concerning the complaint. An attorney who maintains his office for the practice of law in the same judicial district as the respondent may not sit on the reviewing subcommittee for that case."

[3] A witness on behalf of the defendant testified that the grievance committee granted this retroactive extension on its own motion because "the need for one was recognized by [the grievance committee.]" The record

On November 19, 1987, the grievance committee determined that the defendant had violated the Code of Professional Responsibility and directed that a presentment be filed against him in the Superior Court. The grievance committee accordingly filed a presentment, dated April 28, 1988, in the Superior Court, alleging that the defendant was guilty of "misconduct not occurring in the actual presence of the court, involving his character, integrity and professional standing and conduct" in that he had violated sections DR 1-102 (A) (4), DR 1-102 (A) (5), DR 1-102 (A) (6), DR 5-104 and DR 7-101 (A) (3)[4] of the Code of Professional Responsibility. The presentment charged him with "receiving real property in satisfaction of a legal fee from a client not represented by independent counsel . . . failing to expeditiously attempt to reinstate

contains no further explanation of why an extension of time to render a proposed decision was granted after the proposed decision had already been rendered.

[4] Code of Professional Responsibility DR 1-102 (A) (4) provides: "(A) A lawyer shall not . . . (4) Engage in conduct involving dishonesty, fraud, deceipt, or misrepresentation."

Code of Professional Responsibility DR 1-102 (A) (5) provides: "(A) A lawyer shall not . . . (5) Engage in conduct that is prejudicial to the administration of justice."

Code of Professional Responsibility DR 1-102 (A) (6) provides: "(A) A lawyer shall not . . . (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Code of Professional Responsibility DR 5-104 provides: "Limiting Business Relations with a Client. (A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure. (B) Prior to conclusion of all aspects of the matter giving rise to his employment, a lawyer shall not enter into any arrangement or understanding with a client or a prospective client by which he acquires an interest in publication rights with respect to the subject matter of his employment or proposed employment."

Code of Professional Responsibility DR 7-101 (A) (3) provides: "(A) A lawyer shall not intentionally . . . (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B)."

the Complainant's mortgage in order to negotiate a release of that portion of the property the Complainant had conveyed to [him] . . . [and] determining all of the details of his purchase of the Complainant's home and arranging for her to be represented by counsel to avoid the appearance of conflict of interest . . . . ''

The defendant filed motions to dismiss the presentment for lack of subject matter jurisdiction, to strike counts one and three of the presentment and to dismiss count two. The trial court granted the motion to dismiss the presentment and denied the other motions.

In this appeal, the grievance committee contends that the trial court erred in dismissing the presentment. The defendant, on cross appeal, claims error in the trial court's failure to grant his motions to dismiss and to strike portions of the presentment.

I

In its appeal, the grievance committee asserts that the trial court should not have dismissed the presentment. It contends that the trial court erred in concluding that the grievance committee had failed to comply with § 51-90g (c) and that such a failure deprived the trial court of subject matter jurisdiction.

It is important, at the outset, to emphasize that the rules regulating attorney grievance procedures exist within the broader framework of the relationship between attorneys and the judiciary. " 'The practice of law is . . . a profession the main purpose of which is to aid in the doing of justice . . . . ' " *In re Application of Griffiths,* 162 Conn. 249, 254–55, 294 A.2d 281 (1972), rev'd and remanded, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973), quoting *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 414, 165 A. 211 (1933). An attorney ''as an officer of the court in the administration of justice, is continually

accountable to it for the manner in which he exercises the privilege which has been accorded him." *In re Peck,* 88 Conn. 447, 450, 91 A. 274 (1914). This "unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Citations omitted.) *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 524, 461 A.2d 938 (1983). Because of this special relationship, "[w]e have a continuing duty 'to make it entirely clear that the standards of conduct . . . of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . .' *Grievance Committee* v. *Broder,* [112 Conn. 263, 278, 152 A. 292 (1930)]." *In re Application of Pagano,* 207 Conn. 336, 344–45, 541 A.2d 104 (1988). This court will neither neglect nor attempt to avoid that responsibility.

Our review of the language of § 51-90g (c) is, therefore, informed by the judiciary's responsibility for governing attorney conduct. "Disciplinary proceedings are for the purpose of preserving the courts 'from the official ministration of persons unfit to practise in them.' *Ex Parte Wall,* 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883); *Heiberger* v. *Clark,* [148 Conn. 177, 183, 169 A.2d 652 (1961)]; *Grievance Committee* v. *Broder,* [supra, 265]; *In re Peck,* [supra, 452]. . . ." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 524. " ' "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." *In re Bowman,* 7 Mo. App. 569 [1879].' " *In re Application of Pagano,* supra, 339; *In re Peck,* supra. Once the complaint is made, "the court controls the situation and procedure, in its dis-

cretion, as the interests of justice may seem to it to require." *In re Peck,* supra. "[T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct." *In re Peck,* supra, 457. In proceedings such as those at issue, therefore, the attorney's "relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." *Grievance Committee* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941); see also *In re Durant,* 80 Conn. 140, 150, 67 A. 497 (1907). Consequently, ministerial delays do not ordinarily warrant judicial abstention from dealing with the important issues raised by allegations of attorney misconduct.

The regulation of attorney conduct is, therefore, within the court's inherent authority. Section 51-90g and the parallel Practice Book rules authorized the grievance committee to act as an arm of the court in fulfilling this responsibility. Requiring the grievance committee to dismiss a complaint whenever the review subcommittee has failed to act in a timely manner, with no discretion to pursue another course of action if appropriate, would frustrate the purposes of attorney grievance procedures and run counter to the special supervisory role of the courts in regulating attorney conduct. We will, therefore, require such action only if specifically so directed by § 51-90g (c). In examining this statute, we note three questions. Are its time requirements mandatory? Were the statutory mandates violated in this case? What is the effect of such a violation on the jurisdiction of the Superior Court?

### A

Our examination of General Statutes (Rev. to 1987) § 51-90g (c) convinces us that its provisions are mandatory. Section 51-90g (c) plainly stated that "[t]he subcommittee *shall* . . . render its proposed decision not later than ninety days from the date the panel's determination of probable cause . . . was filed with the state-wide grievance committee," that the grievance committee may grant the subcommittee a thirty day extension, and that if the subcommittee does not complete its action within the time allowed, the grievance committee "*shall* . . . inquire into the delay and determine the appropriate course of action." (Emphasis added.)

Our interpretation of the language of § 51-90g (c) is guided by our tenets of statutory construction, which provide that " '[w]here the meaning of a statute . . . is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction.' " *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984); *Connecticut State Board of Labor Relations* v. *Board of Education*, 177 Conn. 68, 73, 411 A.2d 28 (1979); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 46.04. Where, as here, neither the context nor the legislative history indicates a contrary intent, "[t]he use of the word 'shall' by the legislature connotes that the performance of the statutory requirements is mandatory rather than permissive." *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986); see *Sullivan* v. *Liberty Mutual Fire Ins. Co.*, 174 Conn. 229, 233, 384 A.2d 384 (1978); 1A J. Sutherland, supra, § 25.04.

### B

The grievance committee contends that the trial court erred in concluding that the committee had failed to

comply with the time constraints contained in § 51-90g (c). It argues that, despite any delay, it did comply with the requirements of § 51-90g (c) because it "determine[d] the appropriate course of action" and acted upon that determination by granting the subcommittee an extension of time in which to render its proposed decision. We are unpersuaded.

The mandatory requirements of § 51-90g (c), although they permitted the subcommittee to file a motion for an extension of time, did not permit an extension "to exceed thirty days."[5] When construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather " 'read the statute as a whole and so as to reconcile all parts as far as possible.' " *Martone* v. *Lensink*, 207 Conn. 296, 302, 541 A.2d 488 (1988); *Grodis* v. *Burns*, 190 Conn. 39, 44, 459 A.2d 994 (1983). Therefore, even when an extension has been granted, the subcommittee must render its proposed decision within one hundred and twenty days. In granting the grievance committee discretion to pursue the appropriate course of action when a delay occurs, the statute did not authorize nullification of its mandatory time constraints.

There is no dispute that the subcommittee failed to render its proposed decision within the mandatory time constraints. The grievance committee does not contest the trial court's finding that the subcommittee's proposed decision was rendered five months and thirteen days after the local grievance panel's determination of probable cause was filed. It is clear, therefore, that the subcommittee failed to render its proposed decision within ninety days, or even within one hundred and twenty days. Further, the grievance committee admit-

---

[5] The grievance committee granted first a sixty day and then a ninety day extension. The only extension specifically authorized by General Statutes § 51-90g (c), however, is one thirty day extension.

ted at trial that the ninety day period provided by § 51-90g (c) had expired before it granted any extensions. Accordingly, we agree with the trial court's finding that the "subcommittee failed to comply with this statutory mandate."

## C

The grievance committee contends, nevertheless, that the trial court erred in concluding that the subcommittee's failure to comply with the mandates of § 51-90g (c) deprived the trial court of subject matter jurisdiction. We agree with the grievance committee.

Both the broader context of the supervisory role of the judiciary in governing attorney conduct, as discussed above, and the language of § 51-90g (c) support the conclusion that the trial court's jurisdiction was not affected by the delay. The operative language on which we focus is again the phrase of § 51-90g (c) requiring the grievance committee after subcommittee delay to "determine the appropriate course of action." Our holding that this phrase does not authorize unlimited extensions of the statutory time limitations does not imply that, once these time limitations have expired, the grievance committee and the Superior Court are entirely powerless to act.

In interpreting § 51-90g (c), we must give effect to each of its provisions because " ' "statutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." ' " *84 Century Limited Partnership* v. *Board of Tax Review,* 207 Conn. 250, 263, 541 A.2d 478 (1988); *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). "It must also be presumed that the General Assembly had a purpose for every sentence, clause or phrase in the statute." *State* v. *Springer,* 149 Conn.

244, 248, 178 A.2d 525 (1962). We will not, therefore, construe § 51-90g (c) to require that if the subcommittee has failed to act within the prescribed time, and there is no showing of prejudice,[6] the complaint must be dismissed. Such a construction would impermissibly render the final phrase in § 51-90g (c) a nullity. In implementing § 51-90g (c), the grievance committee has discretion to decide what remedy a particular delay warrants. Although the grievance committee may determine that the complaint should be dismissed or that a new subcommittee panel should adjudicate the grievance in a timely fashion, the grievance committee, absent prejudice, is free to act on the tardy subcommittee's recommendation. Accordingly, we conclude in this case that the subcommittee's failure to act within the prescribed time, although a violation of § 51-90g (c), does not mandate dismissal of the complaint.

Support for this interpretation is provided by the legislative history of Public Acts 1988, No. 88-152. This act, passed in 1988, without changing the statutory time constraints, amended § 51-90g (c) to provide that

---

[6] In related circumstances, constitutional and statutory rights to speedy trials have been vindicated by a consideration of a matrix of factors including, most importantly, prejudice rather than by invocation of a rule of automatic dismissal. See, e.g., *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Herring,* 210 Conn. 78, 89–90, 554 A.2d 686 (1989). The defendant does not allege that the delay has prejudiced him in any manner beyond delaying the final decision. We reserve for another day therefore the resolution of grievance procedure delays that are so prejudicial that they implicate the due process rights of an attorney charged with professional misconduct. In grievance proceedings, a defendant is entitled to due process including "notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights." *Grievance Committee* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941); see *In re Application of Courtney,* 162 Conn. 518, 523, 294 A.2d 569 (1972); *In re Durant,* 80 Conn. 140, 150, 67 A. 497 (1907).

the failure of the subcommittee to complete its action on a complaint within the time provided in the section "*shall not* be cause for dismissal of the complaint."[7] (Emphasis added.) Its legislative history evidences no discussion of the added sentence. "[A] major change in legislative policy, we believe, would not have occurred without some sort of opposition or at least discussion in the legislature." *George P. Gustin Associates, Inc.* v. *Dubno,* 203 Conn. 198, 208, 524 A.2d 603 (1987). The legislature's silence, therefore, supports an inference that the legislators considered the additional sentence to be a clarification of § 51-90g (c) rather than a departure from the original meaning of the section. See id. A clarifying act " ' "in effect construes and clarifies a prior statute [and, therefore,] must be accepted as the legislative declaration of the meaning of the original act." ' " *State* v. *Magnano,* 204 Conn. 259, 278, 528 A.2d 760 (1987); *State* v. *Blasko,* 202 Conn. 541, 556-57, 522 A.2d 753 (1987); *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977).

Further, this amendment occurred after a prior complaint against the defendant had been dismissed for a similar committee failure to comply with the time constraints of § 51-90g (c). We have stated that " '[if] the amendment was enacted soon after controversies arose

---

[7] General Statutes (Rev. to 1989) § 51-90g (c) provides: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown. If the subcommittee does not complete its action on a complaint within the period of time provided in this section, the state-wide grievance committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action. *The failure of the subcommittee to complete its action on a complaint within the period of time provided in this section shall not be cause for dismissal of the complaint.*" (Emphasis added.)

as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . .' " *State* v. *Blasko,* supra, 558, quoting 1A J. Sutherland, supra, § 22.31.

We therefore conclude that the delay by the subcommittee violated the provisions of § 51-90g (c). We also conclude, however, that, despite the existence of such a violation, the statute does not require that the complaint be dismissed.

On cross appeal, the defendant contends that the trial court erred in failing to grant his motion to strike counts one and three of the presentment and his motion to dismiss count two. We decline to review those rulings, however, because we conclude that the trial court lacked jurisdiction to rule thereon.

At trial, as on appeal, the defendant contended that the court did not have jurisdiction to hear the case because of the grievance committee's alleged failure to comply with the time restraints of § 51-90g (c). " ' "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it 'can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction.' *Rhode Island* v. *Massachusetts,* 12 Pet. (37 U.S.) 657, 717 [1838]; *Denton* v. *Danbury,* 48 Conn. 368, 372 [1880]." ' " *State* v. *Malkowski,* 189 Conn. 101, 104, 454 A.2d 275 (1983); see *Baldwin Piano & Organ Co.* v. *Blake,* 186 Conn. 295, 297–98, 441 A.2d 183 (1982); *Kohn Display & Woodworking Co.* v. *Paragon Paint & Varnish Corporation,* 166 Conn. 446, 448–49, 352 A.2d 301 (1974); *Carten* v. *Carten,* 153 Conn. 603, 610, 219 A.2d 711 (1966). Therefore, the trial court was required to address the defendant's jurisdictional chal-

lenge before ruling on his other motions.[8] "Once it becomes clear that the trial court lacked subject matter jurisdiction to hear the plaintiffs' complaint, any further discussion of the merits is pure dicta. Lacking jurisdiction, neither the trial court nor this court should deliver an advisory opinion on matters entirely beyond our power to adjudicate." *Doe* v. *Heintz*, 204 Conn. 17, 38, 526 A.2d 1318 (1987) (*Peters, C.J.*, concurring). When the trial court concluded, even erroneously, that subject matter jurisdiction was missing, the remainder of its rulings were merely advisory and we therefore decline to review them at this juncture.

There is error on the appeal, the cross appeal is dismissed, the judgment is vacated and the case is remanded for further proceedings.

In this opinion the other justices concurred.

[8] The trial court granted the motion to dismiss without prejudice. The dismissal is, however, a final judgment on the issue of whether the court had subject matter jurisdiction to hear the complaint.