## JOHN DOE *v.* STATEWIDE GRIEVANCE COMMITTEE (14174)

Lavery, Landau and Schaller, Js.

Argued January 17—officially released June 11, 1996

*James A. Wade,* with whom, on the brief, was *Craig Raabe,* for the appellant (plaintiff).

*Darlene Frances Reynolds,* assistant bar counsel, for the appellee (defendant).

LAVERY, J. The plaintiff appeals from the judgment of the trial court denying the plaintiff's request for a permanent injunction. On appeal, the plaintiff claims that the trial court improperly refused to enjoin the statewide grievance committee (committee) from pro-

ceeding in a matter in which the committee failed to comply with the temporal requirements set forth in General Statutes (Rev. to 1993) § 51-90g and Practice Book § 27J. We conclude that the trial court improperly denied the plaintiff's request to enjoin the committee from taking further action, and, accordingly, reverse the judgment of the trial court.

There is no dispute about the essential facts. The plaintiff, referred to anonymously in his verified complaint as John Doe,[1] is an attorney licensed to practice law in the state of Connecticut. On June 18, 1993, the grievance panel of the judicial district of New Haven, geographical area number six (local grievance panel), commenced grievance proceedings against the plaintiff by filing a complaint[2] with the committee.[3] On August

[1] On April 13, 1994, the trial court granted the plaintiff's request to proceed in this matter anonymously as John Doe. In its memorandum of decision, the trial court ordered that the plaintiff's identity not be disclosed until the appeal period expired. The trial court also stated that it would schedule argument on the issue of whether the plaintiff's identity should be disclosed during the pendency of the appeal. The record does not reveal any further action by the trial court concerning the plaintiff's anonymity in this matter.

[2] The parties stipulate that the grievance proceeding relates to an incident alleged to have occurred on or about December 12, 1990, that did not involve a client or clients' funds.

[3] A grievance proceeding against an attorney is commenced by filing a complaint with the statewide bar counsel. Any person may file a written complaint alleging attorney misconduct. Within seven days, the statewide bar counsel shall refer the complaint to the appropriate local grievance panel for investigation. General Statutes § 51-90e (a); Practice Book § 27F (a). The grievance panel shall investigate the complaint and, within ninety days, determine whether probable cause exists that the attorney is guilty of misconduct. General Statutes § 51-90f (a) and (c); Practice Book § 27F (c) and (f). If the local grievance panel makes a finding of probable cause, the committee either conducts a hearing itself or refers the matter to a subcommittee. General Statutes § 51-90g (a); Practice Book § 27J (c). Similarly, if the local grievance panel makes a finding of no probable cause, the committee either reviews the matter itself to determine whether it agrees with the local grievance panel's determination of no probable cause or refers the matter to a subcommittee for such review. General Statutes § 51-90g (a); Practice Book § 27J (c). Upon a finding of probable cause, either the committee or a subcommittee holds hearings on the complaint. General Statutes § 51-90g (c) and (g); Practice Book § 27J (c) and (i).

31, 1993, the local grievance panel determined that there was insufficient evidence to support a finding of probable cause that the plaintiff was guilty of misconduct. The local grievance panel filed its determination of no probable cause with the committee on September 2, 1993.

On December 16, 1993, the committee informed the plaintiff that, contrary to the determination of the local grievance panel, there was sufficient probable cause to hold a hearing to determine whether the plaintiff was guilty of misconduct. The committee took no further action until February 8, 1994, when it assigned the matter to a subcommittee and scheduled a March 9, 1994 hearing. As of February 8, 1994, more than 120 days had elapsed since the local grievance panel filed its determination of no probable cause. On March 9, 1994, the plaintiff appeared before the subcommittee and filed a motion to dismiss the grievance proceedings on jurisdictional grounds. The subcommittee denied the plaintiff's motion. Thereafter, on March 10, 1994, the plaintiff filed a motion to dismiss the grievance proceedings with the committee based on the same jurisdictional grounds. The committee denied the plaintiff's motion.

The plaintiff commenced this action seeking to enjoin the committee from taking any further action on the underlying grievance complaint. The plaintiff's complaint alleges that the committee is without jurisdiction to take further action in this matter and its failure to render a decision within the statutory time period deprived the plaintiff of his due process rights. On October 25, 1994, the trial court rendered judgment denying the plaintiff's request for a permanent injunction. The plaintiff filed this appeal.

The dispositive issue in this appeal is whether the committee's failure to comply with the timing require-

ments of General Statutes (Rev. to 1993) § 51-90g (g), now § 51-90g (h),[4] and Practice Book § 27J (i)[5] requires dismissal of the underlying complaint alleging attorney misconduct. The plaintiff argues that the committee's failure to comply with the statutory timing requirements necessitates a dismissal of the complaint against the plaintiff. We agree.

We begin our analysis of the plaintiff's claim by recognizing that "the rules regulating attorney grievance procedures exist within the broader framework of the relationship between attorneys and the judiciary. ' "The practice of law is . . . a profession the main purpose of which is to aid in the doing of justice . . . ." ' *In re Application of Griffiths*, 162 Conn. 249, 254–55, 294 A.2d 281 (1972), rev'd and remanded, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973), quoting *Rosenthal v. State Bar Examining Committee*, 116 Conn. 409, 414, 165 A. 211 (1933). An attorney 'as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him.' *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914). This 'unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary

[4] General Statues (Rev. to 1993) § 51-90g (g), now § 51-90g (h), provides: "When the committee conducts the hearing or hearings under this section, it shall render its decision not later than four months from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. . . ." Public Acts 1993, No. 93-370, amended § 51-90g inserting a new subsection (g) and redesignating former subsection (g) as subsection (h). We refer in this opinion to the applicable section as § 51-90g (g).

[5] Practice Book § 27J (i) provides in pertinent part: "If the statewide grievance committee does not assign a complaint to a reviewing committee, it shall have one hundred and twenty days from the date the panel's determination concerning probable cause was filed with it to render a decision dismissing the complaint, imposing sanctions and conditions as authorized by Sec. 27M.1 or directing the statewide bar counsel to file a presentment against the respondent. . . ."

and subjects them to its discipline.'. . . . *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 524, 461 A.2d 938 (1983)." *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 237–38, 558 A.2d 986 (1989). "The regulation of attorney conduct is, therefore, within the court's inherent authority. Section 51-90g and the parallel Practice Book rules authorized the grievance committee to act as an arm of the court in fulfilling this responsibility." Id., 239.

The judiciary has exercised its inherent authority over attorneys by acquiescing to the statutory framework enacted by the legislature and promulgating concurrent rules. See General Statutes § 51-90 et seq.; Practice Book § 27F et seq. By acquiescing to these statutory procedures, the judiciary has limited the committee's jurisdiction to only those matters acted on within the time limitations outlined in § 51-90g. *State* v. *James*, 211 Conn. 555, 561, 560 A.2d 426 (1989); *Adams* v. *Rubinow*, 157 Conn. 150, 156, 251 A.2d 49 (1968).[6] This court, therefore, will not require the committee to dismiss a complaint for failure to act in a timely manner unless such action is mandated by § 51-90g. *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 239.

Section 51-90g (g) is the applicable statute outlining the time constraints for committee review of local panel determinations of probable cause and committee hearings on grievance complaints. That statute provides that the committee "*shall render its decision not later than four months from the date the panel's determination of probable cause or no probable cause was filed with*

---

[6] We recognize that legislation regulating attorney grievance procedures raises issues concerning separation of powers. *Heiberger* v. *Clark*, 148 Conn. 177, 169 A.2d 652 (1961); see also *State* v. *Clemente*, 166 Conn. 501, 353 A.2d 723 (1974). We do not reach these constitutional issues because the judiciary has acquiesced to the legislative procedures. *Adams* v. *Rubinow*, supra, 157 Conn. 156.

*the state-wide grievance committee. . . ."* (Emphasis added.) We conclude that this language clearly and unambiguously mandates that the committee complete its action within four months.

"[W]e approach the task relying on familiar principles of statutory construction in order to determine the intent of the legislature. *Police Dept.* v. *State Board of Labor Relations,* [225 Conn. 297, 303 n.7, 622 A.2d 1005 (1993)]. 'It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . . *Petco Insulation Co.* v. *Crystal,* 231 Conn. 315, 321, 649 A.2d 790 (1994). In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation. *Broadley* v. *Board of Education,* 229 Conn. 1, 6, 639 A.2d 502 (1994); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987).' . . . *Murchison* v. *Civil Service Commission,* 234 Conn. 35, 45, 660 A.2d 850 (1995). The task of determining whether a particular provision is mandatory or directory involves the same criteria, namely, the statute's language, the legislative history and the statutory context. *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 129–31, 394 A.2d 731 (1978)." *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities,* 236 Conn. 681, 688–89, 674 A.2d 1300 (1996). "Where, as here, neither the context nor the legislative history indicates a contrary intent, '[t]he use of the word "shall" by the legislature connotes that the performance of the statutory requirements is mandatory rather than permissive.' *Caulkins* v. *Petrillo,* 200 Conn. 713, 717,

513 A.2d 43 (1986); see *Sullivan* v. *Liberty Mutual Fire Ins. Co.*, 174 Conn. 229, 233, 384 A.2d 384 (1978); 1A J. Sutherland, [Statutory Construction (4th Ed. Sands 1972)] § 25.04." *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 240; see also *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 689–90.

In *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 232, our Supreme Court similarly held that the time constraints contained in § 51-90g (c)[7] were mandatory. The court held, however, that a subcommittee's failure to comply with the timing requirements of § 51-90g (c) was not a jurisdictional defect absent a showing of prejudice. The court based its decision on the language of § 51-90g (c) which, upon the failure of a subcommittee to complete its action on a complaint within the time constraints, allows the committee to "inquire into the delay and determine the appropriate course of action." The Supreme Court stated that "[s]uch a construction [requiring dismissal of the grievance complaint] would impermissibly render the final phrase of § 51-90g (c) a nullity. In implementing § 51-

[7] General Statutes (Rev. to 1987) § 51-90g (c) provided: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown. If the subcommittee does not complete its action on a complaint within the period of time provided in this section, the state-wide grievance committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action." Public Acts 1988, No. 88-152, amended § 51-90g (c) to provide that the failure of the subcommittee to complete its action on the complaint within the time provided in the section "shall not be cause for dismissal of the complaint." The *Rozbicki* court found that the legislature's silence when amending § 51-90g (c) supported an inference that the legislators considered the additional sentence to be a clarification of § 51-90g (c) rather than a departure from the original meaning of the section. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 243–44.

90g (c), the grievance committee has discretion to decide what remedy a particular delay warrants." Id., 243. The *Rozbicki* court concluded that, despite the existence of a violation of § 51-90g (c), that section did not require the complaint to be dismissed. Id.

We hold that § 51-90g (g) requires dismissal of the complaint against the plaintiff. Unlike the time limitations on subcommittee action contained in subsection (c), § 51-90g (g) contains no language authorizing the committee to "inquire into the delay and determine the appropriate course of action." " '[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' " 2B J. Sutherland, Statutory Construction (5th Ed. 1992) § 51.02, pp. 122–23, quoting *Western States Newspapers, Inc.* v. *Gehringer*, 203 Cal. App. 2d 793, 799, 22 Cal. Rptr. 144 (1962); see also *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 100–101, 653 A.2d 782 (1995). We find that the omission of language authorizing the committee to take discretionary action in the event of delay mandates a different conclusion from that found in *Rozbicki*. We hold that once the four month period outlined in § 51-90g (g) expired, the committee was without jurisdiction to take any further action on the complaint, including referring the complaint to a subcommittee.

The committee argues that § 51-90g (c) and Practice Book § 27J (e) are the applicable timing provisions when the committee assigns a complaint to a subcommittee after the expiration of the 120 day period. The committee asks us to conclude that it retains jurisdiction to assign a matter to a subcommittee after the expiration of the 120 day period. Under this theory, the committee could simply refer the matter to a subcommittee in order to revive its case under the savings

provision in § 51-90g (c) and § 27J (e). This construction of the statute would lead to inconsistent results as the merits of an action enjoining the committee from taking further action on a grievance complaint would depend on whether the committee revived its grievance matter prior to the filing of the action. We must avoid such a construction of a statute that leads to bizarre and irrational results. *State* v. *Spears*, 234 Conn. 78, 92, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995). We hold, therefore, that the committee was without jurisdiction to assign the complaint to a subcommittee after the expiration of the 120 day period outlined in § 51-90g (g) and § 27J (i).

Our resolution of this issue is further supported by the legislative history of § 51-90g. In 1986, the legislature amended § 51-90g to protect the rights of attorneys as well as to bolster public confidence in the grievance procedure. As stated in the House of Representatives debate: "[I]t is extremely important at this point that the public know how the system works, that it have some assurance that the standards are going to be laid down and observed consistently . . . by eliminating some of the abuses without itself becoming abusive to those whose professional integrity may be at stake." 28 H.R. Proc., Pt. 23, 1985 Sess., p. 8561, remarks of Representative Richard Blumenthal. Public Acts 1986, No. 86-276, was enacted to expedite the grievance procedure by requiring that a subcommittee render its proposed decision within ninety days from the date the local grievance panel's determination of probable cause or no probable cause was filed with the committee, and by requiring the committee to dispose of the case within four months. 28 H.R. Proc., Pt. 23, 1985 Sess., pp. 8529–30, remarks of Representative William A. Wollenberg.

Public Act 86-276 also authorized the committee to inquire into delayed subcommittee action and to determine the appropriate course of action. No such authori-

zation was given to the committee when it fails to render a decision within the statutory time period. In 1988, the legislature amended the statute further to provide that "[t]he failure of the subcommittee to complete its action on a complaint within [the prescribed time periods] shall not be cause for dismissal of the complaint." Public Acts 1988, No. 88-152, § 6. The legislature did not amend § 51-90g (g) to include similar language.

We find that the legislative history of § 51-90g unequivocally supports a conclusion that the committee is without jurisdiction to take action on a complaint once the four month period expires. The legislature amended § 51-90g (c) twice to allow the committee to inquire into subcommittee delay without requiring dismissal of the complaint. The legislature is presumed to know the existing state of relevant law when it enacts a statute. *State* v. *Dabkowski,* 199 Conn. 193, 201, 506 A.2d 118 (1986). Had the legislature intended to allow committee discretion after expiration of the four month period, it would have amended § 51-90g (g) as it amended § 51-90g (c). We find, therefore, that the legislature intended that committee delay beyond the four month period mandates dismissal of the complaint.

Our conclusion is especially appropriate in a case such as this in which a local grievance panel found no probable cause that the plaintiff was guilty of misconduct. To hold otherwise would render the procedures outlined in § 51-90g and § 27J meaningless. We will not presume that the legislature enacted meaningless legislation or the judiciary promulgated useless rules. *State* v. *Talton,* 209 Conn. 133, 141, 547 A.2d 543 (1988). We conclude, therefore, that the trial court improperly refused to enjoin the committee from further action on the complaint.

The judgment is reversed and the case is remanded with direction to render judgment enjoining the defend-

ant from proceeding on the grievance against the plaintiff.

In this opinion LANDAU, J., concurred.

SCHALLER, J., concurring. Although I concur in the result reached by the majority, I disagree with several aspects of the analysis.

As the majority notes, the dispositive issue in this case is whether the failure of the statewide grievance committee (committee) to comply with the time limitations of General Statutes (Rev. to 1993) § 51-90g (g), now § 51-90g (h), and Practice Book § 27J (i), requires dismissal of the underlying complaint alleging attorney misconduct. As in *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 233–34, 558 A.2d 986 (1989), which governs this case, this issue "concerns the relationship between the judicial department's supervisory responsibility for the conduct of attorneys and the provisions of [statutory] . . . time constraints upon the adjudicatory processes of the Statewide Grievance Committee . . . with respect to complaints of attorney misconduct."

Our Supreme Court stated in *Rozbicki* that "[r]equiring the grievance committee to dismiss a complaint whenever the review subcommittee has failed to act in a timely manner, with no discretion to pursue another course of action if appropriate, would frustrate the purposes of attorney grievance procedures and run counter to the special supervisory role of the courts in regulating attorney conduct. We will, therefore, require such action only if specifically so directed . . . ." Id., 239. Within this framework, the court analyzed § 51-90g (c). Initially, the court concluded that the word "shall" in § 51-90g (c) " 'connotes that the performance of the statutory requirements is mandatory rather than permissive.' " Id., 240. The court, nevertheless, relied on

the savings clause in § 51-90g (c) to conclude that a delay by a subcommittee does not require dismissal. Id., 242–45.

Although the court also emphasized the broader context of the supervisory role of the judiciary in governing attorney conduct, our Supreme Court in *Rozbicki* based its decision primarily on the impact of the § 51-90g (c) savings clause. In the case before us, concerning the mandatory time limit of § 51-90g (g), the absence of a comparable savings clause together with the acquiescence of the judiciary in adopting the time limits in § 27J compels our result. When the committee is proceeding under § 51-90g (g), neither the statute nor the rule of practice authorizes discretionary action in the event of delay beyond the time limit. By adopting the statutory language in the rule of practice, the judiciary has bound the committee to the statutory standard, without allowing discretion as it carries out its supervisory role over attorney conduct. This court is bound by the analysis in the *Rozbicki* decision to reach that result. To this extent, I concur in the majority's analysis.

Because the required result of this case, however, undermines the vital role of judicial supervision of attorney conduct, I disagree with the majority when it attempts to explain and justify the result in terms of reason, common sense and consistency with legislative history or purpose.

The result clearly does not fulfill all the important purposes indicated in the legislative history. The legislative history certainly contains language appropriately indicating that the supervisory process should not be abusive to attorneys. The legislature, however, was also concerned about dealing with the problem of attorney misconduct consistently and fairly in order to eliminate some of the abuses produced by that misconduct and to bolster public confidence in the grievance process.

It is apparent that the purpose of expediting the process was at least as much for the benefit of the public as for those facing charges of misconduct. The result that we are compelled to reach in this case seriously diminishes any benefit to the public.

In this case, a two month delay by the committee in proceeding with a misconduct complaint against an attorney, whose anonymity is ensured and who has demonstrated no prejudice, results in dismissal of the complaint, effectively depriving the trial court of jurisdiction and the public of appropriate judicial supervision of attorneys. By virtue of the committee's dereliction, the detrimental impact on public confidence in the judiciary's authority to supervise attorney misconduct is palpable. The inherent supervisory authority of the judiciary on which our Supreme Court framed its analysis of § 51-90g (c) in *Rozbicki* should not be so easily subverted. See id., 237–39. By acquiescing in the language of § 51-90g (g), the judicial branch has contributed to limiting its own authority. We cannot, however, avoid being controlled by the conclusion in *Rozbicki* that the time limits in § 51-90g are mandatory. Id., 240.

I disagree also with the majority's statement that this conclusion is "especially appropriate in a case such as this in which a local grievance panel found no probable cause that the plaintiff was guilty of misconduct." Because of the trial court's order requiring confidentiality, we do not know the identity of the attorney involved, the nature of the complaint, the reasons for the action of the local grievance panel or the reasons for the action and delay by the committee. It is not appropriate, on the record before us, to speculate as to the rationale or validity of either probable cause determination. I disagree, therefore, with the majority's implicit approval of the local grievance panel's determination.

Finally, the majority's attempt to justify this result in terms of consistency, logic, or common sense must fail. The majority concludes that it would be a bizarre result to allow a committee to revive a case by submitting it to a subcommittee after its 120 days to act has elapsed. Under the result that this court reaches today, however, the committee can refer every case to a subcommittee at the outset, thereby assuring itself of the discretionary authority of § 51-90g (c) to act later. This also leads to an incongruous and absurd result. When the committee promptly refers the matter to a subcommittee, it assures itself of not being strictly bound by the 120 day requirement. If the subcommittee delays, the committee is empowered with discretion to "inquire into the delay and determine the appropriate course of action." General Statutes § 51-90g (c). On the other hand, as in the present case, if the subcommittee referral does not take place within 120 days, the very same committee has no such discretion and becomes powerless to act on a grievance complaint. In that respect, the present result is neither reasonable nor sensible.

Accordingly, I concur in the result.