JOHN DOE *v.* STATEWIDE GRIEVANCE COMMITTEE
(15533)

Borden, Berdon, Katz, Palmer and Peters, Js.

Argued February 19—officially released May 6, 1997

───────────────

*Darlene F. Reynolds,* assistant bar counsel, with whom was *Elizabeth F. Collins,* first assistant bar counsel, for the appellant (defendant).

*James A. Wade,* with whom were *Craig A. Raabe* and, on the brief, *Dina S. Fisher,* for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the failure by the defendant, the statewide grievance committee (committee), to comply with the temporal requirements of General Statutes (Rev. to 1993) § 51-90g (g)[1] and Practice Book § 27J (i),[2] deprives

[1] General Statutes (Rev. to 1993) § 51-90g (g), now § 51-90g (h), provides in relevant part: "When the committee conducts the hearing or hearings under this section, it shall render its decision not later than four months from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. . . ."

Number 93-370, § 2, of the 1993 Public Acts amended § 51-90g by inserting a new subsection (g) and redesignating the former subsection (g) as subsection (h). We refer in this opinion to the applicable section as § 51-90g (g).

[2] Practice Book § 27J (i) provides in relevant part: "If the statewide grievance committee does not assign a complaint to a reviewing committee, it shall have one hundred and twenty days from the date the panel's determination concerning probable cause was filed with it to render a decision dismissing the complaint, imposing sanctions and conditions as authorized by Sec.

the defendant of subject matter jurisdiction to act on a grievance complaint alleging attorney misconduct and, further, deprives the court of subject matter jurisdiction to exercise its inherent authority over attorney conduct. We conclude that it does not.

In June, 1993, misconduct charges against the plaintiff were brought to the attention of the committee. When the committee failed to act within the statutory period, the plaintiff brought this action for injunctive relief in the Superior Court. Determining that the committee's failure to render a decision on a grievance complaint within the prescribed time period was not cause to dismiss the complaint, the trial court rendered judgment denying the plaintiff's request for a permanent injunction against any further action by the committee. The Appellate Court reversed the judgment of the trial court, concluding that the committee's failure to comply with the statutory time period required dismissal of the underlying complaint. *Doe* v. *Statewide Grievance Committee*, 41 Conn. App. 671, 677 A.2d 960 (1996). We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude the failure of the statewide grievance committee to comply with the timing requirements of General Statutes § 51-90g (g) and Practice Book § 27J (i) deprives the court of subject matter jurisdiction over a complaint for attorney misconduct?" *Doe* v. *Statewide Grievance Committee*, 239 Conn. 905, 682 A.2d 999 (1996). We reverse the judgment of the Appellate Court.

As the Appellate Court stated, "[t]here is no dispute about the essential facts. The plaintiff, referred to anonymously in his verified complaint as John Doe,[3] is an

27M.1 or directing the statewide bar counsel to file a presentment against the respondent. . . ."

[3] "On April 13, 1994, the trial court granted the plaintiff's request to proceed in this matter anonymously as John Doe. In its memorandum of decision,

attorney licensed to practice law in the state of Connecticut. On June 18, 1993, the grievance panel of the judicial district of New Haven, geographical area number six (local grievance panel), commenced grievance proceedings against the plaintiff by filing a complaint[4] with the committee.[5] On August 31, 1993, the local grievance panel determined that there was insufficient evidence to support a finding of probable cause that the plaintiff was guilty of misconduct. The local grievance panel filed its determination of no probable cause with the committee on September 2, 1993.

"On December 16, 1993, the committee informed the plaintiff that, contrary to the determination of the local grievance panel, there was sufficient probable cause to

the trial court ordered that the plaintiff's identity not be disclosed until the appeal period expired. The trial court also stated that it would schedule argument on the issue of whether the plaintiff's identity should be disclosed during the pendency of the appeal. The record does not reveal any further action by the trial court concerning the plaintiff's anonymity in this matter." *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 672 n.1.

[4] "The parties stipulate that the grievance proceeding relates to an incident alleged to have occurred on or about December 12, 1990, that did not involve a client or clients' funds." *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 672 n.2.

[5] "A grievance proceeding against an attorney is commenced by filing a complaint with the statewide bar counsel. Any person may file a written complaint alleging attorney misconduct. Within seven days, the statewide bar counsel shall refer the complaint to the appropriate local grievance panel for investigation. General Statutes § 51-90e (a); Practice Book § 27F (a). The grievance panel shall investigate the complaint and, within ninety days, determine whether probable cause exists that the attorney is guilty of misconduct. General Statutes § 51-90f (a) and (c); Practice Book § 27F (c) and (f). If the local grievance panel makes a finding of probable cause, the committee either conducts a hearing itself or refers the matter to a subcommittee. General Statutes § 51-90g (a); Practice Book § 27J (c). Similarly, if the local grievance panel makes a finding of no probable cause, the committee either reviews the matter itself to determine whether it agrees with the local grievance panel's determination of no probable cause or refers the matter to a subcommittee for such review. Id. Upon a finding of probable cause, either the committee or a subcommittee holds hearings on the complaint. General Statutes § 51-90g (c) and (g); Practice Book § 27J (c) and (i)." *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 672 n.3.

hold a hearing to determine whether the plaintiff was guilty of misconduct. The committee took no further action until February 8, 1994, when it assigned the matter to a subcommittee and scheduled a March 9, 1994 hearing. As of February 8, 1994, more than 120 days had elapsed since the local grievance panel filed its determination of no probable cause. On March 9, 1994, the plaintiff appeared before the subcommittee and filed a motion to dismiss the grievance proceedings on jurisdictional grounds. The subcommittee denied the plaintiff's motion. Thereafter, on March 10, 1994, the plaintiff filed a motion to dismiss the grievance proceedings with the committee based on the same jurisdictional grounds. The committee denied the plaintiff's motion.

"The plaintiff commenced this action seeking to enjoin the committee from taking any further action on the underlying grievance complaint. The plaintiff's complaint alleges that the committee is without jurisdiction to take further action in this matter and its failure to render a decision within the statutory time period deprived the plaintiff of his due process rights. On October 25, 1994, the trial court rendered judgment denying the plaintiff's request for a permanent injunction." *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 672–73.

On appeal, the Appellate Court, principally relying upon this court's decision in *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 558 A.2d 986 (1989), concluded that the legislature, with the acquiescence of the judicial branch as demonstrated by Practice Book § 27J, intended § 51-90g (g) to preclude the trial court from exercising its inherent authority over attorney conduct in cases in which the committee has failed to comply with the time limitations. *Doe* v. *Statewide*

*Grievance Committee,* supra, 41 Conn. App. 678.[6] The Appellate Court's conclusion was based upon its determinations that § 51-90g (g) is mandatory in nature and contains no language similar to that in § 51-90g (c)—the provision at issue in *Rozbicki*—authorizing the committee to take discretionary action in the event of a delay. Although we agree that this case is necessarily influenced by *Rozbicki,* we conclude that there is no legislative intent that the failure to comply with the timing requirements of § 51-90g (g) should deprive either the defendant or the court of subject matter jurisdiction.[7]

We begin with this court's decision in *Statewide Grievance Committee* v. *Rozbicki,* supra, 211 Conn. 232, wherein we held that the defendant's failure to act within the time constraints of General Statutes (Rev.

[6] In his concurring opinion, Judge Schaller relied *exclusively* on this court's decision in *Statewide Grievance Committee* v. *Rozbicki,* supra, 211 Conn. 233–34, to conclude that the trial court had improperly refused to enjoin the committee from taking further action on the complaint of attorney misconduct. Examining the legislative history of § 51-90g (g), and challenging the majority's reliance on that history, Judge Schaller remarked that the purpose of expediting the process was at least as much for the benefit of the public as for those facing charges of misconduct and that "[t]he result that [they] are compelled to reach in this case seriously diminishes any benefit to the public." *Doe* v. *Statewide Grievance Committee,* supra, 41 Conn. App. 683.

[7] The plaintiff argued before the Appellate Court, and again before this court, that because § 51-90g (g), unlike § 51-90g (c), does not contain any language providing the committee with the power or discretion to review its own failure to comply with the timing requirements, the committee is thereby deprived of any jurisdiction once the time period has passed and, consequently, the issue in this case is the jurisdiction of the committee and not of the court. As we explain in this opinion, we disagree with the plaintiff's interpretation of the language of § 51-90g (g) and its jurisdictional implications. In cases of alleged attorney misconduct, the jurisdiction of the committee and the jurisdiction of the court are necessarily intertwined and § 51-90g (g) must be interpreted in light of the broad framework of that relationship. Furthermore, as a matter of common sense, we note that it is neither expected nor necessary that language giving the committee control over its own delay would appear in the statute.

to 1987) § 51-90g (c),[8] did not require dismissal of the complaint absent a showing of prejudice. Our decision was premised largely upon the broad supervisory role of the judiciary in governing attorney conduct. We emphasized that "the rules regulating attorney griev-ance procedures exist within the broader framework of the relationship between attorneys and the judiciary. The practice of law is . . . a profession the main pur-pose of which is to aid in the doing of justice . . . . An attorney as an officer of the court in the administra-tion of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. . . . This unique position as offi-cers and commissioners of the court . . . casts attor-neys in a special relationship with the judiciary and subjects them to its discipline." (Citations omitted; internal quotation marks omitted.) Id., 237–38.

We further stated that "[b]ecause of this special rela-tionship, [w]e have a continuing duty to make it entirely clear that the standards of conduct . . . of the mem-

[8] General Statutes (Rev. to 1987) § 51-90g (c) provided: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance commit-tee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown. If the subcommittee does not complete its action on a complaint within the period of time provided in this section, the state-wide grievance committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action."

We note that No. 88-152 of the 1988 Public Acts amended § 51-90g (c) to provide that the failure of the subcommittee to complete its action on the complaint within the time provided in the section "shall not be cause for dismissal of the complaint." In *Rozbicki*, this court concluded that the legislature's silence, when amending § 51-90g (c), supported an inference that the legislators considered the additional sentence to be a clarification of § 51-90g (c) rather than a departure from the original meaning of the section. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 243–44.

bers of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . [and t]his court will neither neglect nor attempt to avoid that responsibility." (Citations omitted; internal quotation marks omitted.) Id., 238.

Consequently, our review of § 51-90g (c) was "informed by the judiciary's responsibility for governing attorney conduct. Disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practise in them. . . . The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . In proceedings such as those at issue, therefore, the attorney's relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review. . . . Consequently, ministerial delays do not ordinarily warrant judicial abstention from dealing with the important issues raised by allegations of attorney misconduct.

"The regulation of attorney conduct is, therefore, within the court's inherent authority. Section 51-90g and the parallel Practice Book rules authorized the

grievance committee to act as an arm of the court in fulfilling this responsibility. Requiring the grievance committee to dismiss a complaint whenever the . . . subcommittee has failed to act in a timely manner, with no discretion to pursue another course of action if appropriate, would frustrate the purposes of attorney grievance procedures and run counter to the special supervisory role of the courts in regulating attorney conduct. We will, therefore, require such action only if specifically so directed by § 51-90g (c)." (Citations omitted; internal quotation marks omitted.) Id., 238–39.

In *Rozbicki*, we thereafter examined § 51-90g (c) in order to decide whether its time requirements were mandatory and, if so, whether the statutory mandates had been violated and what effect such a violation has on the jurisdiction of the Superior Court. We held that the provision's use of the word "shall" was mandatory, but concluded nevertheless that its violation did not require a dismissal of the complaint.[9] "Both the broader context of the supervisory role of the judiciary in governing attorney conduct, as discussed above, and the language of § 51-90g (c) support the conclusion that the trial court's jurisdiction was not affected by the delay. The operative language on which we focus is . . . the [final] phrase of § 51-90g (c) requiring the grievance committee after subcommittee delay to 'determine the appropriate course of action.' . . . We will not, therefore, construe § 51-90g (c) to require that if the subcommittee has failed to act within the prescribed time, and there is no showing of prejudice, the complaint must be dismissed. Such a construction would impermissibly render the final phrase in § 51-90g (c) a nullity." (Cita-

---

[9] Although in *Rozbicki* we used the word "mandatory," our conclusion that, absent a showing of prejudice as a result of the temporal violation, the complaint should not be dismissed, was more consistent with a determination that the time limit was "directory." See *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278–79, 492 A.2d 180 (1985).

tions omitted; internal quotation marks omitted.) Id., 242–43. Accordingly, we concluded that the subcommittee's failure to act within the prescribed time, although a violation of § 51-90g (c), did not mandate dismissal of the complaint.

We agree with the Appellate Court that the issue in this case is informed by *Rozbicki*. We also conclude, however, that it would be inconsistent with the concerns expressed in *Rozbicki* regarding the supervisory role of the court, and the purposes of attorney grievance procedures, to interpret § 51-90g (g) in such a way as to decide this case based solely upon the omission of the discretionary language contained in § 51-90g (c). Rather, in light of those concerns, we conclude that the time limits in issue are directory, and that in the absence of any language expressly denying the committee the authority to review alleged attorney misconduct and stripping the court of its subject matter jurisdiction over attorney misconduct due to the committee's failure to comply with the time requirements of § 51-90g (g), the legislature did not intend such a result.[10]

"Well established principles of statutory construction govern our determination of whether a statutory time period is mandatory or directory. Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . The test to be applied in determin-

___

[10] In light of our determination that § 51-90g (g) does not limit the court's jurisdiction to review attorney misconduct, we need not address the committee's claim that the Appellate Court improperly concluded that the judges of the Superior Court acquiesced in an interpretation of Practice Book § 27J (i) that makes the 120 day time frame jurisdictional.

ing whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Citations omitted; internal quotation marks omitted.) *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 76–77, 676 A.2d 819 (1996).

Looking solely at the words of § 51-90g (g), it would appear that the language requires that the committee "render its decision not later than four months from the date of the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee." Definitive words, such as "must" or "shall," ordinarily express legislative mandates of a nondirectory nature. *State* v. *Metz*, 230 Conn. 400, 410, 645 A.2d 965 (1994); *Lo Sacco* v. *Young*, 210 Conn. 503, 507, 555 A.2d 986 (1989); *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986); *Sullivan* v. *Liberty Mutual Fire Ins. Co.*, 174 Conn. 229, 233, 384 A.2d 384 (1978). "We have noted, however, that the use of the word 'shall,' though significant, does not invariably establish a mandatory duty. *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 152, 561 A.2d 1373 (1989); see, e.g., *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278, 492 A.2d 180 (1985)." *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 690, 674 A.2d 1300 (1996). Therefore, we turn to the other aforementioned considerations in deciding whether § 51-90g (g) is directory or mandatory.

"One . . . reliable guide in determining whether a statutory provision is directory or mandatory is whether

the failure of the state to comply with its provisions results in either a penalty or a requirement that the state seek an extension of time. *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 273–74, 610 A.2d 584 (1992); *State* v. *White*, 169 Conn. 223, 238, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975)." *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 695. It is noteworthy that the legislature elected not to include either option in the language of § 51-90g (g).

Another guide to interpreting subsection (g) of § 51-90g is to look to other provisions governing the powers and duties of the committee. See *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995) ("[i]n order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation"); *University of Connecticut Chapter, AAUP* v. *Governor*, 200 Conn. 386, 399, 512 A.2d 152 (1986) (statute to be read "as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation"). As we held in *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 239, the failure to comply with the time constraints of § 51-90g (c) does not deprive the court of jurisdiction. Therefore, were we to agree with the plaintiff's interpretation of § 51-90g (g), we would in essence be stating that the committee, in cases in which the subcommittee conducts the hearing, would, after 120 days, have more power in its review of subcommittee delay to assess appropriate action than the Superior Court, in those cases in which the committee has failed, after essentially the same period of time, to assign the complaint for a hearing, would have over such committee delay. Such a pronounced dichotomy between, on the one hand, *allowing* the committee

authority to review delay, and, on the other hand, *denying* the court any authority to review delay would be problematic at best. We should not construe statutory language to mandate such a curious result.

Additionally, we note that General Statutes § 51-90h (b) provides that within sixty days after the fourteen day period for the filing of statements in support of or in opposition to the subcommittee's proposed decision, the committee is required to issue a decision. That same subsection also provides, however, that the committee may instead refer the complaint to the same or a different subcommittee for further investigation and a proposed decision, in which event there are no additional time constraints imposed. To interpret § 51-90g (g) as mandatory and as imposing a jurisdictional constraint, when neither § 51-90g (c) nor § 51-90h have time constraints that have jurisdictional implications, would be inconsistent and indeed unreasonable. Because we read statutes " 'with common sense so as to accomplish a reasonable result' "; *State* v. *Chiarizio*, 8 Conn. App. 673, 682, 514 A.2d 370, cert. denied, 201 Conn. 809, 515 A.2d 379 (1986); we are inclined, in the face of these other provisions, to reject the plaintiff's invitation to interpret § 51-90g (g) as mandatory in nature and as establishing a jurisdictional constraint.

This inclination is buttressed by the legislative history relative to § 51-90g (g). That history indicates that the revision of attorney discipline procedures in 1986 was influenced by a concern for the public and for expediency in the disciplinary process for the benefit of the public as well as for those facing charges. See *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 683 (*Schaller, J.*, concurring). It does not, however, reflect an intent to limit judicial branch involvement over attorney grievance complaints. Indeed, not only is there no indication of an intent to limit the jurisdiction of the court, but, to the contrary, the legislators

expressed deference to the judiciary. See 28 H.R. Proc., Pt. 23, 1985 Sess., pp. 8538–45, 8547–48, 8554–55. Indeed, the legislature in the primary debate recognized that the court is "the ultimate authority as to attorneys, in how they are disciplined." Id., p. 8542, remarks of Representative Richard T. Tulisano. The debate in the House of Representatives reflects concern with judicial independence and the rule-making authority of the court relative to the attorney disciplinary process, not jurisdictional considerations. Id., pp. 8542–55. Nothing in the legislative history specifically supports a mandatory linguistic interpretation.

It is well settled that statutes are to be read as favoring subject matter jurisdiction, absent a clear indication of legislative intent to limit it. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 765, 628 A.2d 1303 (1993). There is no such clear indication here. We therefore are brought full circle to the purpose of the comprehensive disciplinary scheme before us.

"An attorney as an officer of the court in the administration of justice, is *continually* accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession."

(Citation omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554–55, 663 A.2d 317 (1995). In light of these very strong public policy concerns for attorney accountability, and the need for public confidence in the justice system, it would be improper to interpret § 51-90g (g) to create mandatory jurisdictional limitations that would ultimately undermine the long-standing law regarding the inherent authority of the court to regulate attorney conduct.[11]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN, PALMER and PETERS, Js., concurred.

BERDON, J., dissenting. The majority concludes that the failure of the defendant, the statewide grievance committee (committee), to comply with the time requirements of General Statutes (Rev. to 1993) § 51-90g (g)[1] and Practice Book § 27J (i),[2] does not deprive

[11] The dissent voices concern for those attorneys against whom there are outstanding complaints who, as a result of this opinion, may not be assured of a decision by the committee within four months of the panel's determination of probable cause. The dissent is troubled by the possibility that these attorneys would be required to reveal the existence of any such outstanding complaints in their applications for malpractice insurance or judgeships. Although we recognize this concern, we disagree that it should affect this court's decision as to *jurisdiction*. Rather, this concern goes to the issue of prejudice, which the trial court is always free to consider as part of its oversight responsibilities.

[1] General Statutes (Rev. to 1993) § 51-90g (g), now § 51-90g (h), provides in relevant part: "When the committee conducts the hearing or hearings under this section, it shall render its decision not later than four months from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. . . ."

[2] Practice Book § 27J (i) provides in relevant part: "If the statewide grievance committee does not assign a complaint to a reviewing committee, it shall have one hundred and twenty days from the date the panel's determination concerning probable cause was filed with it to render a decision dismissing the complaint, imposing sanctions and conditions as authorized by Sec.

the committee of subject matter jurisdiction to act on a grievance complaint alleging attorney misconduct.[3] In other words, according to the majority, the committee may permissibly pursue a grievance complaint well beyond the four month time limitation specifically provided in § 51-90g (g). I disagree.

I agree with the majority that we have a special obligation with respect to assuring that attorney conduct comports with standards of the practice of law, "a profession the main purpose of which is to aid in the doing of justice . . . ." *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 414, 165 A. 211 (1933). "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. . . . This unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 237–38, 558 A.2d 986 (1989).

I begin by setting forth the procedural framework for complaints filed under the statewide grievance system.[4] Essentially, this system provides three tiers of review. First, a local grievance panel reviews a grievance complaint to determine whether probable cause exists to warrant further investigation. General Statutes § 51-90f (a); Practice Book § 27F (c). Second, the committee,

27M.1 or directing the statewide bar counsel to file a presentment against the respondent. . . ."

[3] The judges of the Superior Court have adopted rules that are substantially identical to the General Statutes with respect to the committee. See Practice Book §§ 27B through 27N.

[4] The chart set forth in the appendix to this dissent, which was included in the plaintiff's brief, graphically illustrates the procedural route provided by the statutory scheme.

or at its designation, a subcommittee, reviews the local panel's determination. General Statutes (Rev. to 1993) § 51-90g (a); Practice Book § 27J (c). Finally, if a subcommittee performs the review, it must issue a proposed decision to the committee, or if the committee itself conducts the review, it renders a final decision. General Statutes (Rev. to 1993) § 51-90g (a), (c), (f) and (g); Practice Book § 27J (c), (e), (h) and (i).

Our focus in this case is the procedural requirements with respect to the committee once the local panel has made a determination of probable cause or no probable cause. Under § 51-90g (a), the committee or a subcommittee may review the local panel's determination. If the committee refers the matter to a subcommittee, the subcommittee is required to render a proposed decision within ninety days of the local panel's determination, unless the subcommittee moves for an extension of thirty days, which shall only be granted for good cause. General Statutes (Rev. to 1993) § 51-90g (c). If the committee itself conducts the review, then it must render a final decision within four months of the local panel's determination. General Statutes (Rev. to 1993) § 51-90g (g).

The time limit on subcommittee action in subsection (c) contains a savings clause, which provides that the subcommittee's failure to complete its action within the prescribed time period is not necessarily cause for dismissal. In such circumstances, the committee can, on its own initiative or on motion of the complainant or respondent, inquire into the delay and "determine the appropriate course of action." General Statutes (Rev. to 1993) § 51-90g (c). In contrast to the provisions relating to subcommittee action, the General Assembly and the judges of the Superior Court did not provide a savings clause for the committee itself when it fails to abide by the four month time limit to review the local panel's determination.

In reaching its conclusion, the majority today ignores the mandate in § 51-90g (g), the statute's legislative history and our own rules of practice, and stands the precedent of *Rozbicki* on its head. In other words, according to the majority, "shall" means shall when the court wants it to mean shall, but "shall" does not mean shall when the court is of another mind.[5]

My analysis starts, as the Appellate Court's did, with the plain language of the statute. General Statutes (Rev. to 1993) § 51-90g (g) provides in relevant part: "When the committee conducts the hearing or hearings under this section, *it shall render its decision not later than four months* from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. . . ." (Emphasis added.) It is undisputed that more than four months elapsed from the time that the local grievance panel filed its determination of no probable cause to the time that the committee referred the matter to a subcommittee. I, like the Appellate Court, conclude that "this language clearly and unambiguously mandates that the committee complete its action within four months." *Doe* v. *Statewide Grievance Committee*, 41 Conn. App. 671, 676, 677 A.2d 960 (1996). "Where the meaning of a statute . . . is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction." (Internal quotation marks

---

[5] Indeed, the majority's reasoning is reminiscent of the following passage from the book, Through the Looking-Glass, by Lewis Carroll:

" 'There's glory for you!'

" 'I don't know what you mean by "glory," ' Alice said.

" 'I meant, "there's a nice knock down argument for you!" '

" 'But "glory" doesn't mean "a nice knock down argument," ' Alice objected.

" 'When *I* use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.' " (Emphasis in original.) L. Carroll, Through the Looking-Glass (Messner ed. 1982) p. 198.

omitted.) *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984).

Furthermore, even if § 51-90g (g) were ambiguous, the legislative history supports the conclusion that the legislature intended the time limits in § 51-90g (g) to be mandatory. In 1986, the legislature revised the statute to include the requirement that the committee render its decision within four months of the local panel's determination. Public Acts 1986, No. 86-276, § 8 (P.A. 86-276). In enacting this amendment, the legislature emphasized the importance of the newly-added four month time frame for committee action. "The amendment maintains . . . that if you're going to have a hearing with probable cause, that must be held within four months . . . ." 28 H.R. Proc., Pt. 23, 1985 Sess., p. 8562, remarks of Representative Richard D. Tulisano. As another legislator stated: "Once the determination is made that there is probable cause to continue to a full hearing, at that point within the four months, the hearing would have to take place. . . . One of the complaints of the community has been that it takes too long for this grievance procedure to take place. It is hoped that this would tighten that up." Id., pp. 8529–30, remarks of Representative William L. Wollenberg.

Indeed, the legislature underscored the need to establish rigid guidelines for the investigation of complaints of misconduct in order to bolster public confidence in the process as well as to protect the rights of attorneys who are involved. "[I]t is extremely important at this point that the public know how the system works, that it have some assurance that the standards are going to be laid down 'and observed consistently, and I think this advances [the statute] by . . . eliminating some of the abuses without itself becoming abusive to those whose professional integrity may be at stake." Id., p. 8561, remarks of Representative Richard Blumenthal. Accordingly, the legislative history reflects that the leg-

islature intended that the committee must render a decision within four months of the filing of a complaint.

Furthermore, when the judiciary acquiesced in the time limitation imposed by P.A. 86-276, § 8, in 1986, we used the identical language in Practice Book § 27J (i): "[The committee] shall have one hundred and twenty days from the date the panel's determination concerning probable cause was filed with it to render a decision . . . ." Surely, when the rule was adopted by the then 143 judges of the Superior Court, we certainly knew what "shall" meant.

Finally, even if the language of § 51-90g (g), the legislative history and our own rules of practice are not clear, the precedent of *Rozbicki* governs this case. Although the majority cites extensively to *Rozbicki*, it totally ignores the fundamental tenets of construction that solely led the court to conclude that the time limitation in § 51-90g (c) was directory, rather than mandatory, and the reasoning of which, if applied to this case, would compel the conclusion that the time limitation in § 51-90g (g) was mandatory. As Judge Schaller of the Appellate Court stated in his concurrence in *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 682, "[a]lthough the court also emphasized the broader context of the supervisory role of the judiciary in governing attorney conduct, our Supreme Court in *Rozbicki* based its decision primarily on the impact of the § 51-90g (c) savings clause. In the case before us, concerning the mandatory time limit of § 51-90g (g), the absence of a comparable savings clause together with the acquiescence of the judiciary in adopting the time limits in § 27J compels our result. When the committee is proceeding under § 51-90g (g), neither the statute nor the rule of practice authorizes discretionary action in the event of delay beyond the time limit. By adopting the statutory language in the rule of practice, the judiciary has bound the committee to the statutory stan-

dard, without allowing discretion as it carries out its supervisory role over attorney conduct. This court is bound by the analysis in the *Rozbicki* decision to reach that result."

Furthermore, it is reasonable to conclude that in order to achieve public confidence in the grievance process and fairness to the attorneys subject to the process, the legislature had good reason to establish mandatory time limits for the committee and a more flexible approach for the subcommittee. With respect to subcommittee action, it is entirely logical that the time limits imposed on the subcommittee are not mandatory, because the committee, on motion of the respondent, the claimant or on its own, may inquire into the subcommittee's delay in rendering a proposed decision. General Statutes (Rev. to 1993) § 51-90g (c). Importantly, the committee has the authority under that same subsection to "determine the appropriate course of action" when there has been subcommittee delay. In other words, the committee has the statutory authority to oversee all subcommittee action and to compel the subcommittee to act when it has failed to do so in a timely fashion. In contrast, the committee is self-governing—there are no provisions in § 51-90g (g) that provide an avenue for the respondent, or any other party, to move that the committee inquire into its own delay or, for that matter, determine the appropriate course of action. In other words, there is no check on the committee when the committee itself has failed to abide by the statutory guidelines, unless this court were to construe the provisions of § 51-90g (g) as mandatory.

Although attorneys occupy a special place in our system of justice, that does not mean that we should ignore their rights. The plain language of § 51-90g (g), its legislative history, the rules of this court, and, indeed, our own precedent dictate that the committee must act

within four months.[6] There are practical reasons that the legislature obviously considered in circumscribing the committee's jurisdiction by requiring it to act within this short time frame. First, the public has the right to a prompt determination of whether an attorney has committed unethical conduct. Second, anyone who has practiced law not only knows the devastating effect that a grievance complaint may have on an ethical attorney, but also its practical consequences. Just the pendency of the complaint, regardless of whether it is provable, can, for example, have an effect on the renewal of an attorney's legal malpractice insurance or on an application for a judgeship.[7] It is absolutely clear that it is essential that the professional conduct must stand the test of strict scrutiny, but in doing so we must also refrain from trampling on the rights of the members of the legal profession.[8]

Accordingly, I dissent.

---

[6] I recognize that it has been argued that, under the conclusion reached by my analysis, "the committee can refer every case to a subcommittee at the outset, thereby assuring itself of the discretionary authority of § 51-90g (c) to act later." *Doe* v. *Statewide Grievance Committee*, supra, 41 Conn. App. 684 (*Schaller, J.*, concurring). This argument, however, presupposes that the committee will act in bad faith by purposely engaging in such dilatory tactics. I will not, therefore, subscribe to such a view.

[7] Indeed, as the plaintiff's counsel pointed out at oral argument, an attorney would be obligated to report that a grievance is pending even though a local grievance panel has made a determination of no probable cause, because the committee may eventually make, under the majority's construction of § 51-90g (g), a contrary finding well beyond the four month period.

[8] I agree with the majority's statement in footnote 11 of its opinion that my concerns about the victims of attorney misconduct, the public and attorneys should not be determinative of whether the time limits in § 51-90g (g) implicate the committee's jurisdiction. Nevertheless, these concerns are appropriate to consider in ascertaining the legislative intent. As I have pointed out in this dissent, one of the public concerns expressed by Representative Wollenberg in the legislative debates with respect to adopting the mandatory four month time limit was the length of time that the grievance process took and the need to provide finality to the process.

# APPENDIX

Local Panel

Probable Cause /
No Probable Cause

"Probable Cause" — "No Probable Cause'

**Statewide Grievance Committee**

Committee
Review:
PC/No PC
Determination
**- or -**
Subcommittee
Review:
PC/No PC
Determination

"No Probable
Cause" — "Probable
Cause" — "Probable
Cause" — "No Probable
Cause"

Dismissal

REVIEW

**Statewide Grievance Committee**

120 days
maximum
time limit

90 days
plus
optional
30 day
extension

Grievance
Committee
hearing on the
complaint

Subcommittee
hearing on
the complaint

"Decision" ← REVIEW — "Proposed Decision"