[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the application of the Statewide Grievance Committee (the "Committee") seeking an order of suspension and the appointment of a trustee pursuant to practice Book §§ 2-42[1]
and 2-64,[2] respectively, against the respondent, Attorney Frederick D. Baldwin ("Baldwin"). The Commission made the application based on its belief that Baldwin persistently failed to respond to the Commission's inquiries concerning repeated overdrafts of his client's trust account (the "trust account") and had failed to comply with a subpoena concerning the same subject. CT Page 15446
The court finds the following facts to have been proved. Baldwin agreed to represent Mr. Ralph Corlette ("Corlette"), an elderly gentleman of substantial means who was under conservatorship imposed and supervised by the probate court. Baldwin arranged for the conservatorship to be dissolved and thereupon assumed complete control over Corlette's financial affairs without probate court supervision. Baldwin received and deposited into the trust account funds belonging to Corlette and disbursed most, if not all, of those funds, leaving Corlette a ward of the state.
Baldwin failed to prepare or maintain a receipt and disbursement journal for the trust account and failed to maintain a separate accounting page for Corlette's assets. He failed' to prepare quarterly reconciliations of the trust account, and he failed to maintain journals or client ledgers. He also did not keep all bank statements, checkbooks or canceled or voided checks relating to the trust account.
During the time Baldwin represented Corlette and managed Corlette's affairs, the Committee was notified by the Glastonbury Bank and Trust Company (the "GBT") that Baldwin had overdrawn the trust account, which was maintained at GBT, on nine separate occasions from February 28, 2000, to August 25, 2000. After the Committee received notification of each overdraft, the Committee referred the matter to the Statewide Grievance Counsel ("Counsel"). Counsel wrote letters to Baldwin requesting documents and other information concerning the overdrafts for the purpose of conducting an inquiry into possible misconduct. Baldwin failed to respond to any of Counsel's requests. Counsel filed five complaints with the Committee concerning the overdrafts and Baldwin's failure to respond to Counsel's requests.
The Committee scheduled a hearing for January 4, 2001, and Counsel issued a subpoena on behalf of the Committee to Baldwin, ordering him to appear and to produce certain specified documents, which Baldwin was required to maintain by Practice Book § 2-27(b)(1) through (5), for the purpose of conducting an inquiry into possible misconduct. Baldwin appeared at the hearing but failed to produce most of the documents subpoenaed. He promised to forward to the Committee copies of the documents he did produce but failed to honor his promise.
Before the date of the hearing, GBT notified the Committee that Baldwin had overdrawn the trust account eight additional times. After the hearing, GBT notified the Committee that Baldwin had overdrawn the trust account two additional times. Counsel wrote Baldwin seeking information concerning the additional ten overdrafts and once again Baldwin ignored the inquiry. As a result, Counsel filed five additional grievance complaints with the Committee against Baldwin. Thereafter, the Committee CT Page 15447 received two additional notices from GBT that Baldwin had overdrawn the trust account. GBT notified the Committee that Baldwin had written checks on the trust account for which there were insufficient funds 21 times.
The Committee filed an application for the suspension of Baldwin from the practice of law and for the appointment of a trustee, charging that Baldwin mishandled the trust account as indicated by "more than twenty overdrafts," including overdrafts during the course of grievance proceedings. The Committee further charges that Baldwin repeatedly failed to produce information, failed to comply with the subpoena properly served on him and failed to honor his promises to produce copies of the few subpoenaed documents he did produce at the January 4, 2000 Committee hearing.
The court conducted a hearing on the Committee's application. Attorney Baldwin feigned ignorance and assured the court that he could and would comply with the subpoena given sufficient time. The court continued the hearing to afford Baldwin a fair opportunity to comply with the subpoena and ordered Baldwin to produce the documents which the Committee subpoenaed by the continued hearing date. Once again Baldwin failed to comply. He repeated his earlier explanation that he was unable to produce the documents because his files were both voluminous and in disarray and that as a solo practitioner he did not have the time to cull through his files and compile the documents, thereby admitting that he failed to maintain and document the trust account as required by the rules of practice. Baldwin never gave any other reason for his failure to comply with the subpoena at that or any other stage of the proceedings.
During the continued hearing conducted by the court, Baldwin did produce a ledger of the trust account which he prepared after the grievance proceedings commenced which evinced irregularities and apparent ethical violations in his handling of the trust account. The ledger included entries showing that he had written checks to his minor daughter, to himself, and to American Express to pay his personal bill. He was unable to provide any documentation to substantiate the propriety of those checks. Baldwin admitted that he used the American Express account established in his name to make purchases on behalf of clients, rather than maintaining a separate client account.
After several continuances and in the face of Baldwin's repeated claims that he did not have the time to compile the material necessary to comply with the subpoena, the court issued an order that Baldwin engage an independent certified public accountant to review his files and conduct an independent compliance audit of the trust account and issue an opinion as to whether Baldwin had mishandled the trust account. The hearing was CT Page 15448 continued once again to afford Baldwin an opportunity to engage an accountant and determine the date by which the audit could be completed. Baldwin appeared at a continuation of the hearing and stated that he had engaged an accounting firm to conduct the audit and that the audit could be completed by October 15, 2001. Once again the hearing was continued, this time to October 15, 2001, and the court ordered him to produce the audit on that date.
On August 21, 2001, Baldwin was at Hartford Hospital where he underwent tests and treatment for cardiac arrhythmia. One month later, on September 26, 2001, Baldwin sought a continuance of the October 15, 2001 hearing and additional time to produce the audit. He claimed that due to a heart condition his doctor, who had not even seen the Hartford Hospital records, had ordered him to avoid stress and therefore Baldwin had been medically unable to provide the assistance necessary to conduct the audit. Due in part to the fact that the audit was ordered in order to relieve Baldwin of the responsibility of culling through his files, the court denied his request for a continuance and expressly ordered Baldwin to appear as scheduled and to introduce any evidence admissible under the Code of Evidence which would substantiate his claims of medical incapacity. Baldwin appeared at the hearing but did not offer any admissible evidence to substantiate his claim of medical incapacity. With the consent of Counsel, Baldwin did introduce a $415.00 bill from Hartford Hospital for his August 21, 2001 hospitalization, and aftercare instructions to follow-up with his personal physician, avoid stress and return if arrhythmia recurred. Baldwin neither claimed nor introduced evidence of further medical examination, treatment or arrhythmia. His request for a continuance stated that a month after his hospital treatment, his treating physician had not received the Hartford Hospital records. The court therefore finds that Baldwin's heart condition was not dire and did not prevent him from reviewing his files. Moreover, since he claimed that the audit would exonerate him, assisting with the audit would relieve, not cause, stress.
The court finds that Baldwin engages in persistent, dilatory and disingenuous acts aimed at obfuscating proper attempts to ascertain the facts for the purpose of concealing the fact that he either did not have the requested records or he did have them and the records established that he engaged in misconduct.
 DISCUSSION
Mismanagement of Trust Account
 Misappropriation and/or Commingling
CT Page 15449
The obligations of an attorney with respect to the management of his or her client's funds are clear and unambiguous. Practice Book § 2-27
(a) provides:
 Consistent with the requirement of Rule 1.15 of the Rules of Professional Conduct each lawyer or law firm shall maintain, separate from the lawyer's or the firm's personal funds, one or more accounts accurately reflecting the stats of funds handled by the lawyer or firm as fiduciary or attorney, and shall not use such funds for any unauthorized purpose.
Rule 1.15(a) of the Rules of Professional Conduct provides:
 A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . . Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for such period of time as may be required under applicable law after termination of the representation.
The checks Baldwin wrote to his minor daughter, to his American Express account and to himself, without documenting the propriety of those disbursements indicate that he did not maintain his client funds separate from his own or that Baldwin misappropriated this client's funds thereby violating Rule 1-15 (a) of the Rules of Professional Conduct which also provides that a lawyer "shall not use such funds for any unauthorized purpose."[3]
 Failure to Prepare and Maintain Proper Records of Trust Account
In addition to mismanaging his trust fund and commingling and/or misappropriating client funds, Baldwin admits that he mismanaged his trust account. Baldwin also violated Practice Book § 2-27(b) which provides in relevant part:
 Each lawyer . . . maintaining one or more trust accounts as defined in Section 2-28 (b) shall keep records of the maintenance and disposition of all funds of clients . . . held by the lawyer . . . in a fiduciary capacity from the time of receipt to the time of final distribution. Each lawyer or law firm shall retain the records required under this section for a period of seven years after final distribution CT Page 15450 of such funds or any portion thereof
Baldwin also violated the provisions of the Practice Book which prescribe the type of records which an attorney must prepare and maintain and the period of time those records must be maintained. Practice Book § 2-27
(b) further provides in relevant part:
 Specifically, each lawyer or law firm shall maintain the following in connection with each such trust account: (1) a receipt and disbursement journal identifying all deposits in and withdrawals from the account and showing the running account balance; (2) a separate accounting page or column for each client or third person for whom funds are held showing (A) all receipts and disbursements and (B) a running account balance; (3) at least quarterly a written reconciliation of trust account journals, client ledgers and bank statements; (4) a list identifying all trust accounts . . . and (5) all checkbooks, bank statements, and canceled or voided checks.
Baldwin admitted that he did not prepare or maintain a receipt and disbursement journal identifying all deposits in and withdrawals from the account and showing the running account balance. He did not prepare or maintain a separate accounting page or column for each client showing all receipts and disbursements and a running account balance. He did not prepare any written reconciliations of the trust account journals, client ledgers and bank statements. He did not maintain that he was unable to produce all checkbooks, bank statements, and canceled or voided checks. In short, Baldwin did not keep any of the records required by the Practice Book and the Rules of Professional Conduct. Baldwin's failure to adhere to the Practice Book and the ethics rules for managing client funds constitutes mismanagement of the trust account.
Incompetence
Moreover, Baldwin admitted that he was unable to manage Corlette's affairs competently because he underestimated the magnitude of the engagement he undertook. He admitted that he failed to institute proper and adequate fiscal management processes. His failure to appreciate the undertaking and to manage his trust account in accordance with the Practice Book also constitutes yet another violation of the ethics rules which requires that an attorney represent his clients competently. Rules of Professional Conduct 1.1. Baldwin also breached his ethical duty to "act with reasonable diligence and competence in representing a client" as required by rule 1.3 of the Rules of Professional Conduct. CT Page 15451
Failure to Comply with State and Federal Tax Laws
Baldwin may have failed to comply with state and federal laws in connection with his disbursement of client funds and management of his client's affairs. The ledger also shows that Baldwin made payments to an individual he identified as an employee of Corlette who Baldwin hired to help him manage Corlette's affairs. The ledger does not reflect, however, the payment of federal or state employment taxes or social security. Baldwin was unable to explain why such payments were not reflected in the ledger.
Baldwin mismanaged the trust account by failing to keep his funds separate and apart from those of his clients' funds, failing to prepare and maintain the required records of the trust account, continuing representation of Corlette when he knew he was incompetent to do so, failing to pay taxes on Corlette's behalf and misappropriating client funds.
Failure to Produce Documents Required to be Produced
In addition to charging Baldwin with mishandling the Trust Account the Committee charges him with failure to produce documents required to be produced. In order to assure compliance with the rules of practice and the Rules of Professional Conduct and to further protect the public and assure public confidence in the legal system, the Practice Book provides that "[t]he judges of the Superior Court shall appoint one or more grievance panels in each judicial district." Practice Book § 2-29
(a). Each panel is required to "inquire into and investigate offenses . . . involving the character, integrity, professional standing and conduct of members of the bar in this state." Practice Book § 2-29(e)(1). In order to ascertain whether attorneys are mishandling their clients' funds, Practice Book § 2-28(f) states that a financial institution at which a trust account is maintained "shall report to the statewide grievance committee within seven business days from the date of such presentation, any instrument presented against insufficient funds. . . ." When the Committee is notified of an overdraft, the "committee may delegate to the statewide bar counsel the authority to investigate overdraft notifications and determine that no misconduct has occurred or that. no further action is warranted." Practice Book § 2-28(g). An attorney must make its "books of account and statements of reconciliation, and any other records required to be maintained . . . available upon request of the statewide grievance committee or its counsel for review and audit upon a finding by the statewide grievance committee or a grievance panel that there exists probable cause that the lawyer or law firm is guilty of misconduct." Practice Book § 2-27
CT Page 15452 (c). Baldwin overdrew the trust account 21 times and although the Committee, after being notified of the overdrafts, attempted to investigate the overdrafts directly and through Counsel, Baldwin failed to comply with the attempts of the Committee and Counsel to investigate, violating Practice Book § 2-27(c).
Baldwin also engaged "in conduct that is prejudicial to the administration of justice" in violation of rule 8.4(4) of the Rules of Professional Conduct when he repeatedly ignored Counsel's requests for information. Baldwin also violated rule 8.1(2) of the of Rules of Professional Conduct by failing to respond to counsel's requests for information.[4]
While an attorney shall not knowingly fail to respond to a lawful demand for information from an administrative or disciplinary authority, the rule does not apply to information otherwise protected by rule 1.6.[5] Baldwin has not invoked rule 1.6 by claiming that the information is confidential. Nor has Baldwin claimed that he has failed to disclose information in the exercise of his constitutional rights against self incrimination afforded to him under the 5th
Amendment to the United States Constitution.[6]
 Failure to Comply with Subpoena
Practice Book § 2-35(b) provides: "The statewide grievance committee and the reviewing committee shall have the power to issue a subpoena to compel any person to appear before it to testify in relation to any matter deemed by the statewide grievance committee or the reviewing committee to be relevant to the complaint and to produce before it for examination any books or papers which, in its judgment, may be relevant to such complaint. The Committee did issue a subpoena to Baldwin to appear and produce trust account records in connection with its investigation of the overdrafts. Baldwin's failure to produce the documents subpoenaed not only constitutes "conduct that is prejudicial to the administration of justice" in violation of rule 8.4(4) of the Rules of Professional Conduct but also constitutes a failure "to respond to a lawful demand for information from an administrative or disciplinary authority" such as the Committee in violation of rule 8.1(2) of the Rules of Professional Conduct.
Failure to Keep Promises
Baldwin made and failed to keep his repeated promises to provide Counsel with trust account information. The court observed this failure first hand each time he appeared. He made promises and each time he appeared he had a feeble excuse as to why he failed to produce all that he CT Page 15453 promised.
Threat of Irreparable Harm to Present and Future Clients
"If there is a disciplinary proceeding pending against a lawyer and the Committee believes that the lawyer poses a substantial threat of irreparable harm to his clients or to prospective clients, the Committee is obliged to advise the statewide bar counsel. The statewide bar counsel must then apply to the court for an order of interim suspension." Practice Book § 2-24(a). Pending final disposition of the disciplinary proceeding, the court has the authority to, if it finds that the lawyer poses a substantial threat of irreparable harm to his clients or to prospective clients, enter an order of interim suspension, or may order such other interim action as the court deems appropriate. Practice Book § 2-42(b).
Having found, based in part on Baldwin's own admissions, that Baldwin's acts and omissions constitute numerous violations of both the rules of practice and the Rules of Professional Conduct, the next issue to be determined is whether Baldwin poses a threat of irreparable harm to his current and future clients and if so, the extent of the discipline to be imposed.
"An attorney, as an officer of the court, is accountable to the court for the manner in which it exercises the privilege which has been accorded to him. His admission to the bar is conditioned on his continued fitness and safety to exercise the privilege accorded to him, so that when he demonstrates that he is unfit or unsafe to be entrusted with the responsibilities and obligations of any attorney, his right to continue to practice law is forfeited." Doe v. Statewide Grievance Committee,240 Conn. 671, 684, 694 A.2d 1218 (1997), quoting Massameno v. StatewideGrievance Committee, 539 Conn. 554-55, 663 A.2d 317 (1995). Baldwin's conduct demonstrates that he is incapable of being entrusted with the responsibilities and obligations of an attorney. His acts, omissions and admissions show that he has repeatedly violated the rules of practice and the Rules of Professional Conduct by failing to handle and account for client funds entrusted to him, misappropriating and/or commingling client funds, accepting and keeping an engagement he was incompetent to perform, failing to produce records and comply with subpoenas, and thwarting disciplinary proceedings. He is unable to devote the time and energy necessary to meet the rigorous ethical and professional standards an attorney is responsible to meet and he is of questionable integrity. Accordingly, he has forfeited his privilege to practice law.
Sanctions
CT Page 15454
The American Bar Association has adopted Standards for Imposing Lawyer Sanctions (the "Standards") which have been widely used by judges in this state in determining the appropriate sanction to impose in disciplinary actions. Statewide Grievance Committee v. Shluger, 230 Conn. 668, 673 n. 10, 646 A.2d 781 (1994). Section 3.0 of the Model Standards provide that the court should consider "(a) the duty violated, (b) the lawyer's mental state, and (c) actual or potential injury caused by the lawyer's misconduct, and (d) the existence of aggravating or mitigating factors." ABA/BNA Lawyers' Manual on Professional Conduct, Standards for Imposing Lawyer Sanctions § 3.0 (2001).
Duty Violated
The many duties violated are clear. To summarize, Baldwin repeatedly violated the duties imposed by the rules of practice and the Rules of Professional Conduct as stated above. He violated his duty to maintain records, to reconcile his records with bank statements, to safeguard his clients funds, to manage their funds so that their obligations and needs could be timely met, to eliminate any misapprehension by producing on demand records he was required to keep, to comply with a subpoena, to comply with a court order, and to assist in the resolving any disciplinary matter.
Actual or Potential Injury
The actual injury caused by Baldwin's misconduct is unknown because Baldwin's dilatory and obfuscatory conduct has prevented the court, the Committee, Counsel and the court from ascertaining all of the facts. The potential injury, however, could be grave. As indicated above, Mr. Corlette was an elderly gentleman of means when he became Baldwin's client, and he was a ward of the state when he died. Baldwin has stated that no one was injured as evidenced by the fact that no one has complained. Mr. Corlette was unable to manage his own affairs during Baldwin's representation and therefore could not have known if he had a basis to complain. He is now dead. The court doubts that the lack of a complaint is indicative of anything other than to illustrate why the Committee and its counsel exist, and that purpose is to protect the unwary and unsophisticated public. Even if no individual was harmed, the public's confidence in the legal system would be undermined if the court were to allow attorneys to flout and defy the rules of practice and the Rules of Professional Conduct with impunity, not to mention the orders of the court all of which exist to protect the public. The court is also mindful of the fact that Baldwin has other clients, some of whom may be incapacitated or unsophisticated and therefore powerless to determine if they have a basis for a complaint and if so how to lodge one. Based on the facts, there is a strong potential that Corlette lost his entire life CT Page 15455 savings due to "Baldwin's breach of his professional responsibility.
Baldwin's Mental State
The court assesses Baldwin's mental state as tenuous. Whether his heart condition is grave or not, he is symptomatic of stress. He did experience arrhythmia and he appeared nervous and defensive when he appeared before the court. Moreover, Baldwin was devoid of any appreciation of the extent and gravity of his transgressions. He expressed frustration with the Committee's attempts to clarify the misapprehension created by the repeated overdrafts, his failure to respond to inquiries, his failure to honor his promises and his failure to honor a subpoena evince a total lack of appreciation for the very need to comply with the rules of practice and professional conduct. He was not repentant; instead, he portrayed himself as an inadvertent victim of a state agency arbitrarily imposing unreasonable demands on a solo practitioner. He was unable to comprehend that the Committee sought only information which he was responsible for preparing and maintaining in the ordinary course of engaging in the licensed practice law.
Aggravating Factors
Most of the aggravating factors listed in § 9.22 of the Model Standards[7] are present in this case. There are in essence prior disciplinary offenses due to the fact that Baldwin continually overdrew the trust account, even as the disciplinary proceedings progressed, giving rise to multiple complaints. He was suspended from the practice of law prior to October 15, 2001 for nonpayment of his Client Security Fund fee. His actions appear to be a selfish attempt to avoid the repercussions of his misconduct. It is inconceivable that, however onerous the request for information and how much work he had to do to comply, he could not have complied with the subpoena in the many months which elapsed between the time it was issued and October 15, 2001. His ledger suggests the reason why he did not produce the records sought. It documented misappropriations of this client's funds for the benefit of his daughter and himself, or at best, a failure to keep client funds separate from his personal funds. He failed to comply for the selfish reason that he did not want to disclose his improprieties. His dubious and unsubstantiated allegations of physical incapacity constitute false statements and deceptive practices employed to obfuscate the investigative process.
Baldwin is unremorseful. He refuses to concede any wrongdoing, not even the disbursements to his minor daughter, and instead insists that, as a sole practitioner, he is a victim of the Committee's unreasonable expectations and demands. CT Page 15456
The vulnerability of his apparent victim is clear. Corlette was described by Baldwin as an elderly man of means who was unable to manage his own affairs and yet Baldwin had his conservatorship dissolved and spent his assets leaving him a ward of the state.
Baldwin is an experienced former corporate attorney who has practiced law for more than twenty years. He has had ample time to familiarize himself with and comport his practice to the Rules and the Practice Book.
Mitigating Factors
None of the mitigating factors set forth in § 9.32 of the Standards are present.[8] His disciplinary record has not abated. Instead, it continues to grow as he was suspended for. nonpayment of a fee which attorneys are required to pay. He made no credible disclosure of any personal or emotional problems.
Suspension and Appointment of Trustee
Having considered and weighed the factors in the ABA/BNA Model Standards and the fact that while misappropriation may be suspected, but none has been proved, the court hereby suspends Baldwin from the practice of law for the earlier of (a) three years or such date as (b) the Committee is satisfied that Baldwin (i) did not mishandle or misappropriate his client funds and (ii) has instituted policies and procedures requisite to comply with the Practice Book and the Rules of Professional Conduct and (c) the court finds the conditions contained in (b) have been satisfied.
Whenever an attorney is suspended, the court, upon such notice to him or her as the court may direct, shall appoint an attorney or attorneys to inventory the files of the suspended attorney and to take such action as seems indicated to protect the interests of the attorney's clients. Practice Book § 2-64. Accordingly, the court appoints Attorney Mark Shipman to inventory the files of Baldwin, turn over to the Committee all files and other records pertaining to Mr. Ralph Corlette and all other documents contained in the subpoena issued by the Committee to Baldwin, and to take such action as seems indicated to protect the interests of his clients.
BY THE COURT
Vanessa L. Bryant, J. CT Page 15457